MARC J. FAGEL (Cal. Bar No. 154425)
MICHAEL S. DICKE (Cal. Bar No. 158187)
MARK P. FICKES (Cal. Bar No. 178570)
    fickesm@sec.gov
SUSAN L. LAMARCA (Cal. Bar No. 215231)
    lamarcas@sec.gov
K.C. ALLAN WALDRON (Cal. Bar No. 231866)
    waldronk@sec.gov
DAVID A. BERMAN (N.Y. Bar No. 4334884)
    bermand@sec.gov
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

U.S. COURTS

DEC 16 2010

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLISPIE, and JENNIFER RANSOM,<br><br>    Defendants,<br><br>and<br><br>BOSCO FINANCIAL, LLC, and ENERGY EXECUTIVE CONSULTING, LLC,<br><br>    Relief Defendants. | Case No.<br><br>10-621-CV EJL<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## SUMMARY OF THE ACTION

1. This matter involves a scheme to manipulate the market for Alternate Energy Holdings Inc.'s ("AEHI") stock and defraud individuals who purchased the company's stock. AEHI is a development stage company that purportedly plans to develop a nuclear reactor in Payette County, Idaho. AEHI and Gillispie have raised millions of dollars from individual investors in Idaho, elsewhere in the U.S., and Asia by making misleading statements about the viability of AEHI, which has no realistic possibility of building a multi-billion dollar nuclear reactor. AEHI has never had any revenue or product. Beginning in 2006, Defendants engaged in a scheme to pump up the price and volume of AEHI's stock to artificially high levels through false press releases and promoters, and subsequently dump the stock through secret sales made by other entities and individuals connected to AEHI. The scheme was carried out by Defendant Donald L. Gillispie, founder and CEO of AEHI, and Defendant Jennifer Ransom, Senior Vice-President of Administration and Secretary of AEHI.

2. Gillispie's scheme had two components: promoters and press releases. Starting when AEHI went public in September 2006, Gillispie engaged promoters to persuade individual investors to buy restricted stock. Additionally, Gillispie encouraged promoters to enter sale orders at the end of certain trading days in order to increase AEHI stock's price and volume to artificially high levels. Gillispie also caused AEHI to issue a series of press releases that touted AEHI stock. Gillispie knew that some of the press releases were false and misleading. For example, AEHI press releases falsely stated that no officer had sold stock. In reality, AEHI Senior Vice-President of Administration Jennifer Ransom had sold at least one million shares. She hid her stock sales from AEHI investors and the public, failing to file forms notifying the Commission of her sales. In addition, Gillispie himself directed sales of more than one million shares of AEHI stock through nominees, thereby hiding from the public his conduct. Proceeds of those sales went to Gillispie, who spent the money on lavish personal expenses such as his Maserati sports car.

3.      Defendants AEHI, Gillispie and Ransom have violated, and continue to violate, the antifraud provisions of the federal securities laws in connection with the purchase or sale of securities. In addition to the emergency relief requested by the Commission in its *Ex Parte* Application for a Temporary Restraining Order filed concurrently with the complaint, the Commission seeks an order preliminarily and permanently enjoining them from further conduct that violates the securities laws and requiring them to disgorge their ill-gotten gains, with prejudgment interest. The Commission also seeks an order requiring Defendants to pay civil money penalties. The Commission further seeks an order prohibiting Gillispie from serving as an officer or director of any public company in addition to an order prohibiting Gillispie and Ransom from participating in any offering of penny stock.

4.      In addition to the emergency relief requested by the Commission in its *Ex Parte* Application for a Temporary Restraining Order, the Commission further seeks disgorgement of all ill gotten gains disbursed to Relief Defendants Bosco Financial, LLC and Energy Executive Consulting, LLC.

## JURISDICTION

5.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

6.      This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

7.      Venue is proper in the District of Idaho pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. During the period described in this complaint, AEHI had its principal place of business in this district and

3

Defendants Gillispie and Ransom resided in this district. In addition, acts, practices, and courses of business that form the basis for the violations alleged in this complaint occurred in this district.

## INTRADISTRICT ASSIGNMENT

8. Assignment to the Southern Division is appropriate pursuant to Local Civil Rule 3.1 because a substantial part of the events and omissions giving rise to the Commission's claims occurred, among other places, in Ada County.

## DEFENDANTS

9. **Alternate Energy Holdings, Inc.** was founded by Donald L. Gillispie and incorporated in Nevada in 2001, with its principal place of business in Eagle, Idaho. The company went public in September 2006 as a result of a reverse merger, and registered its securities under Section 12(g) of the Exchange Act on October 8, 2008. AEHI's stock is quoted on the OTC Bulletin Board and on the Pink Sheets operated by Pink OTC Markets Inc. It is a development stage company that is purportedly planning to build a nuclear power plant in Payette County, Idaho. The Commission has suspended trading in the stock of AEHI pursuant to Section 12(k) of the Exchange Act.

10. **Donald L. Gillispie,** age 67, has been President, CEO, and Chairman of AEHI at least since the company went public in 2006. During the relevant period, Gillispie resided in Thaxton, Virgina, and Eagle, Idaho.

11. **Jennifer Ransom,** age 36, has been Senior Vice-President of Administration and Secretary for AEHI since at least 2008. She also has a personal relationship with Donald Gillispie and is the beneficiary of his IRA account. During the relevant period, Ransom resided in Star, Idaho.

## RELIEF DEFENDANTS

12. **Bosco Financial, LLC ("Bosco")** is an Idaho limited liability company based in Boise, Idaho, and owned by Jennifer Ransom and Brian L. Webb. Bosco received financial

4

distributions to which it was not entitled. Bosco is named as a Relief Defendant in this action for the purpose of assuring complete relief.

13. **Energy Executive Consulting, LLC ("Energy Executive")** is an Idaho limited liability company based in Eagle, Idaho, and owned by Donald L. Gillispie. Energy Executive received financial distributions to which it was not entitled. Energy Executive is named as a Relief Defendant in this action for the purpose of assuring complete relief.

## FACTUAL ALLEGATIONS

### A. Gillispie Forms AEHI and Takes It Public

14. Gillispie incorporated AEHI in 2001. In 2006, Gillispie took the company public through a reverse merger. Although Gillispie initially ran the company out of his home in Thaxton, Virginia, in approximately 2007, he moved the company's headquarters to Eagle, Idaho.

### B. Despite AEHI's Weak Financial Condition, Defendants Promote AEHI

15. Despite pitching many business ventures that the company planned to pursue over the past four years (including harvesting lightning; developing fuel additives to reduce natural gas production costs by 40 percent; and using nuclear-powered desalination reactors to provide the third world with clean water), AEHI has no revenue and describes itself as a development stage company. AEHI's promotional material claims that AEHI plans to pay the $10 billion cost of building the nuclear reactor "[w]ith capital raised from stock and direct investments." According to AEHI's Form 10-K for the fiscal year ended December 31, 2009, AEHI has "minimum liquid assets" and "and will be reliant upon stock offerings to fund any kind of nuclear operations." The company took in millions of dollars through private placement offerings, yet according to its most recent Form 10-Q filed with the Commission on November 15, 2010, AEHI had no revenues for the nine months ended September 2010. Despite AEHI's weak financial condition, Gillispie stated in a November 12, 2010 interview that, in the long term, AEHI "could rival Exxon Mobil in profitability."

### C. Gillispie Uses Promoters to Manipulate AEHI Trading Volume and Stock Price

16. Soon after AEHI became a public company in 2006, Gillispie engaged the services of stock promoters to find prospective investors for AEHI and to manipulate AEHI's stock price. Gillispie offered promoters AEHI stock in exchange for their efforts. Gillispie coached promoters on how to manipulate AEHI's stock price, instructing them to buy at the end of certain trading days to increase artificially the stock's price and trading volume.

17. In 2009, Gillispie became frustrated with some promoters he retained because they were not buying enough AEHI stock to manipulate sufficiently AHEI's stock price. Gillispie accused them of lying about whether they had bought AEHI stock at high prices as he instructed. Gillispie also instructed them to buy larger increments of stock in order to affect the price. He tried to incentivize the promoters to manipulate the stock more aggressively by offering them additional AEHI stock if they could get the stock price up to specific targets and keep the price there for a specified period of time. Gillispie encouraged further price manipulation in advance of meetings with wealthy potential investors in order to make the investment appear more attractive.

### D. Defendants Make Misrepresentations and Omissions, and Fail to File SEC Filings Disclosing Material Events

#### i. *AEHI and Gillispie Misrepresent That No Officer Has Sold AEHI Stock*

18. Gillispie used press releases as a key part of his scheme to manipulate AEHI's stock price and volume. AEHI has issued 166 press releases since it went public in September 2006, 87 of them since January 2010, despite the fact that the company has no revenue or meaningful operations. Several press releases contain false and misleading statements.

19. On September 7, 2010, AEHI issued a press release claiming that "Based on confidence in AEHI's accomplishments and long term potential, company directors and line officers have maintained their stock ownership, in which **no shares have been sold since company inception**." (emphasis added). On September 30, 2010, an AEHI press release quoted Donald Gillispie as stating: "Recent insider purchases and the fact that **neither I**, our CFO, board members, **nor any officers** who have day-to-day line responsibilities for running the company **have sold a single share since the Company's inception** speak to our strong confidence in the outlook for the business." (emphasis added).

20. Both statements are false. AEHI's Senior Vice-President of Administration and Secretary Jennifer Ransom sold one million AEHI shares netting proceeds of $675,326.14 between June and September 2010. As described below, Gillispie directed her sales.

21. Gillispie's tactics worked. AEHI's average daily closing price for the month in April 2010 was $0.18 and average daily volume for the month was 262,905. AEHI issued 11 press releases in May and during this time the daily average closing price for the month rose to $0.43 and monthly average volume rose to 894,950. Ransom secretly sold her stock from June to September – with her last two September 2010 sales at $0.72 and $0.74 per share.

22. As an AEHI officer, Ransom was required to report her purchases and sales of AEHI stock made either directly or indirectly on her behalf, to the Commission, pursuant to Rule 16a-3 of the Exchange Act. But Ransom failed to file any SEC Forms 3, 4, or 5 disclosing these sales, effectively keeping her sales secret from investors and the public.

23. Defendants AEHI and Gillispie knew, or were reckless in not knowing, that their claims to investors and the public that no AEHI officers had sold stock were false and misleading. Defendants' misrepresentations were material because, among other things, investors were misled into believing that AEHI's officers believed so strongly in the company's future that they had never sold AEHI stock. Defendant Ransom knew or was reckless in not knowing that she substantially assisted AEHI's and Gillispie's misconduct by hiding her stock sales from the public and AEHI investors.

7

### ii. *AEHI and Gillispie Misrepresent That Gillispie Has Not Sold AEHI Stock*

24. The September 7 and September 30, 2010, press releases falsely stated that CEO Gillispie had not sold shares. Although Gillispie has not sold shares held in his name, he sold stock through nominees Jennifer Ransom and AEHI attorney Brian Webb. In 2010, Ransom sold at least one million AEHI shares, as set forth in paragraph 20 above. Additionally, Gillispie sold shares through AEHI attorney Brian Webb. In 2010, Webb sold at least 137,000 shares of AEHI stock. Gillispie, Ransom, and Webb all had brokerage accounts located at the same firm and used the same broker. Gillispie instructed the broker to sell stock for Ransom and Webb, including how and when to execute the trades.

25. Gillispie enriched himself using the proceeds of these nominee sales. Ransom transferred at least $200,000 of the $675,326.14 in proceeds from her sales of AEHI stock to Gillispie. Ransom wrote a check to Bosco (her limited liability company) for the majority of the $200,000, but the check was deposited in Gillispie's Energy Executive bank account, which Gillispie uses for personal expenses, such as jewelry, cruises, and his Maserati sports car. Thus, Gillispie's statement that he never sold AEHI shares was false in light of his use of Ransom and Webb as his nominees for stock sales.

26. As an AEHI officer, Gillispie was required to report his purchases and sales of AEHI stock made either directly or indirectly on his behalf, to the Commission, pursuant to Rule 16a-3 of the Exchange Act. But Gillispie failed to file any Forms 3, 4, or 5 disclosing these sales, effectively keeping his sales secret from investors and the public.

27. Defendants AEHI and Gillispie knew, or were reckless in not knowing, that their claims to investors and the public that Gillispie had not sold stock were false and misleading. Defendants' misrepresentations were material because, among other things, investors were misled into believing that Gillispie believed so strongly in the AEHI's future that he never sold AEHI stock. Defendant Ransom knew or was reckless in not knowing that she substantially assisted AEHI's and Gillispie's misconduct by transferring proceeds from her stock sales to Gillispie.

iii. *AEHI and Gillispie Falsely State in a Private Placement Memorandum That They Have Funding*

28. Since January 2009, AEHI has issued at least four private placement memoranda ("PPM"). PPMs are documents used by companies to solicit investors to purchase issuers' securities. AEHI's March 31, 2009 PPM stated that "The project is funded and seeking N[uclear] R[egulatory] C[omission] approval." The project was the purported development of a nuclear reactor in Idaho. This statement in the PPM was false. The company's Form-10K for fiscal year ended December 31, 2008 -- filed with the Commission on March 31, 2009 -- indicated that the company had no such funding: "The Company may need to obtain loans to fund any amounts not funded by private placement subscriptions." The Form 10-K described the company's financial condition as very weak and explained that AEHI "has minimum liquid assets" and "will be reliant upon stock offerings to fund any kind of nuclear operations." The 10-K further stated that "The monies raised by any private offering may not be sufficient for the continued proposed operations of AEHI." AEHI made material misrepresentations to potential investors when they wrote that they had funding in the March 2009 PPM.

29. AEHI and Gillispie knew or were reckless in not knowing that the statements in the PPM concerning funding were false and misleading.

iv. *AEHI and Gillispie Falsely State Gillispie's 2009 Compensation*

30. In its Form 10-K for the fiscal year ended December 31, 2009, signed and certified by Gillispie, AEHI stated that Gillispie's cash compensation for 2009 was $133,000 that "consisted of expense allotment for travel, auto, Idaho living expenses, entertainment." AEHI reported no other cash compensation to Gillispie for 2009.

31. In 2009, AEHI paid Gillispie and Energy Executive (Gillispie's LLC) at least $188,000 – $55,000 more than AEHI disclosed to the public. Thus, AEHI and Gillispie understated Gillispie's compensation by approximately 30%.

32. AEHI and Gillispie knew or were reckless in not knowing that their statements about Gillispie's compensation were false.

    v.    *AEHI Fails To Disclose A Material Change in Gillispie's 2010 Compensation*

33. AEHI has not provided any updated information about Gillispie's compensation since filing its Form 10-K on March 31, 2010. Gillispie's salary increased to $306,500 during 2010, because AEHI's board increased Gillispie's salary to $40,000 per month effective July 1, 2010. In addition to the $306,500 salary, Energy Executive (Gillispie's limited liability company) received at least $267,359 in investor money from AEHI in 2010. Plus, Gillispie received at least $200,000 from Ransom after he directed her secret stock sales described above in paragraphs 20, 21 and 25. Gillispie's 2010 cash compensation from AEHI totals at least $773,859 – a more than $640,000 increase over the 2009 figure released to shareholders. Yet, AEHI failed to file a Form 8-K with the Commission or otherwise inform the public.

    vi.    *AEHI Falsely States That A Promoter Was Not Paid for Touting AEHI Stock*

34. On October 14, 2010, AEHI issued a press release announcing that Pinnacle Digest "vetted" and "recommended" AEHI stock. Pinnacle holds itself out as an exclusive online financial newsletter for investors. The release stated that "Pinnacle Digest was not paid or compensated by AEHI in any way for writing the article."

35. This statement was false. Pinnacle's website disclosed that it had been paid to display and disseminate AEHI news.

36. Defendants AEHI and Gillispie knew, or were reckless in not knowing, that their claims to investors and the public about payment to promoters were false and misleading.

### E. AEHI Continues to Issue New Press Releases

37. AEHI issues a new press release almost every business day, most recently on November 29, December 1, 2, 3, 6, 10, and 13, 2010. As recently as December 6, a promotional fax purporting to originate from AEHI provided contact information for those seeking to invest in AEHI, noting that investors had the option of purchasing the company's publicly traded stock or making multi-million-dollar direct investments in the company, and quoting Gillispie extolling nuclear power as "a tremendous investment opportunity with excellent return potential." From November 30 to December 7, the daily trading volume of AEHI stock doubled, rising from 357,500 to 841,900 shares.

### F. AEHI Has Raised Millions of Dollars from Investors While Issuing Press Releases

38. As set forth in paragraph 18 above, AEHI has issued 166 press releases since it went public in September 2006, 87 of them since January 2010, despite the fact that the company has no revenue or meaningful operations. Several press releases contain false and misleading statements. Gillispie's scheme to manipulate the market is working. In 2010, investors have invested at least $5 million in AEHI.

### G. The Commission Suspends Trading of AEHI Stock

39. On December 14, 2010, the Commission suspended the trading of AEHI stock pursuant to Section 12(k) of the Exchange Act which grants the Commission emergency authority to suspend the trading of any security where the Commission believes suspension is in the public interest and will protect investors.

### FIRST CLAIM FOR RELIEF

**(Violations of Section 17(a) of the Securities Act by
Defendants AEHI and Gillispie)**

40.     Paragraph numbers 1 through 39 are re-alleged and incorporated herein by reference.

41.     Defendants AEHI and Gillispie have, by engaging in the conduct set forth above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails: (a) with scienter, employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

42.     By reason of the foregoing, Defendants AEHI and Gillispie have directly or indirectly violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and unless enjoined will continue to violate this provision.

### SECOND CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5
By Defendants AEHI and Gillispie)**

43.     Paragraph numbers 1 through 39 are re-alleged and incorporated herein by reference.

44.     Defendants AEHI and Gillispie, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of

business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

45. By reason of the foregoing, Defendants AEHI and Gillispie have directly or indirectly violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder and unless restrained and enjoined will continue to violate these provisions.

### THIRD CLAIM FOR RELIEF

**(Violations of Section 13(a) of the Exchange Act and Rule 13a-11 By AEHI)**

46. Paragraph numbers 1 through 39 are re-alleged and incorporated herein by reference.

47. Defendant AEHI, by engaging in the conduct set forth above, violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 thereunder [17 C.F.R. § 240.13a-11], which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to file with the Commission accurate reports of significant events within four days of the event.

48. By reason of the foregoing, Defendants AEHI has directly or indirectly violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 thereunder [17 C.F.R. § 240.13a-11] thereunder and unless restrained and enjoined will continue to violate these provisions.

### FOURTH CLAIM FOR RELIEF

**(Aiding and Abetting Violations of 10(b) of the Exchange Act and Rule 10b-5 By Defendants Gillispie and Ransom)**

49. Paragraph numbers 1 through 39 are re-alleged and incorporated herein by reference.

50. Gillispie and Ransom knowingly provided substantial assistance to AEHI's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], and therefore are liable as aiders and abettors. Unless restrained and enjoined,

they will continue to aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

## FIFTH CLAIM FOR RELIEF

### (Violations of Section 16(a) of the Exchange Act and Rule 16a-3 By Defendants Gillispie and Ransom)

51. Paragraph numbers 1 through 39 are re-alleged and incorporated herein by reference.

52. Defendant Gillispie has been an officer of AEHI in his capacity as CEO, President, and Chairman of AEHI since at least 2006. Defendant Ransom has been an officer of AEHI in her capacity as Senior Vice-President of Administration and Secretary for AEHI since at least 2008.

53. By engaging in the conduct described above, Gillispie and Ransom failed to file statements accurately reflecting changes in their beneficial ownership of AEHI's common stock and annual statements accurately reflecting their beneficial ownership of AEHI's common stock. By reason of the foregoing, Gillispie and Ransom violated and, unless restrained and enjoined, will continue to violate, Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Enjoin Defendants AEHI and Gillispie from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

II.

Enjoin Defendant AEHI from directly or indirectly violating Section Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-11 thereunder [17 C.F.R. § 240.13a-11].

III.

Enjoin Defendants Gillispie and Ransom from aiding and abetting violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

IV.

Enjoin Defendants Gillispie and Ransom from directly or indirectly violating Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)].

V.

Enter an order barring Gillispie from serving as an officer or director of any public company, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

VI.

Enter an order barring Gillispie and Ransom from participating in an offering of penny stock, pursuant to Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

VII.

Enter an order freezing the assets of Defendants AEHI, Gillispie, and Ransom, and Relief Defendants Energy Executive and Bosco.

VIII.

Enter an order for Defendants and Relief Defendants to provide a verified accounting identifying (i) the location and disposition of all funds received from investors; (ii) the location and disposition of all accounts controlled by Defendants or held for their benefit; and (iii) the location and value of all investor assets, as well as personal or other assets currently held by Defendants, or under their control or over which they may exercise actual or apparent authority.

IX.

Issue an order requiring Defendants and Relief Defendants to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon.

X.

Issue an order requiring Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

XI.

Enter an order preventing Defendants and Relief from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard-copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of the Defendants and Relief Defendants.

XII.

Enter an order permitting expedited discovery.

XIII.

Enter an order temporarily freezing the assets of Defendants AEHI, Gillispie and Ransom and Relief Defendants Bosco and Executive Energy Consulting.

XIV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

XV.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated: December 16, 2010					Respectfully submitted,

									*/s/ Allan Waldron*
									K.C. Allan Waldron
									Mark P. Fickes
									Attorneys for Plaintiff
									SECURITIES AND EXCHANGE COMMISSION