MARC J. FAGEL (Cal. Bar No. 154425)
MICHAEL S. DICKE (Cal. Bar No. 158187)
MARK P. FICKES (Cal. Bar No. 178570)
   fickesm@sec.gov
SUSAN L. LAMARCA (Cal. Bar No. 215231)
   lamarcas@sec.gov
K.C. ALLAN WALDRON (Cal. Bar No. 231866)
   waldronk@sec.gov
DAVID A. BERMAN (N.Y. Bar No. 4334884)
   bermand@sec.gov
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiff,<br><br>   v.<br><br>ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLISPIE, and JENNIFER RANSOM,<br><br>     Defendants,<br><br>   and<br><br>BOSCO FINANCIAL, LLC, and ENERGY EXECUTIVE CONSULTING, LLC,<br><br>     Relief Defendants. | Case No.<br><br>CORRECTED DECLARATION OF K.C. ALLAN WALDRON IN SUPPORT OF MEMORANDUM IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION |

I, K.C. Allan Waldron, declare as follows:

I am an attorney duly admitted to practice in the State of California. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify as follows:

1. I am a staff attorney in the San Francisco Regional Office of the United States Securities and Exchange Commission (the "Commission"), the plaintiff in the above-captioned matter. I am one of the attorneys who had primary responsibility for the Commission's investigation of this matter. I am also one of the attorneys responsible for litigating this matter. I have custody of the Commission's investigation file concerning this matter, including the documents described below.

## Publicly Filed Exhibits

2. During the course of the Commission's investigation, the Commission obtained a copy on an article published in The Bedford Bulletin on October 11, 2006, attached hereto as Exhibit A.

3. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on October 23, 2006, attached hereto as Exhibit B.

4. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on December 4, 2006, attached hereto as Exhibit C.

5. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on January 17, 2007, attached hereto as Exhibit D

6. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on January 18, 2007, attached hereto as Exhibit E.

7. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on May 19, 2007, attached hereto as Exhibit F.

8. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on July 18, 2007, attached hereto as the Exhibit G.

9. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on July 30, 2007, attached hereto as the Exhibit H.

10. During the course of the Commission's investigation, the Commission obtained a copy of an email sent by Donald Gillispie on August 7, 2007, attached hereto as the Exhibit I.

11. During the course of the Commission's investigation, I caused our paralegal staff to download a copy of Alternate Energy Holdings, Inc.'s Form 10-12G, filed on October 8, 2008, from the Bloomberg website, excerpts of which are attached hereto as Exhibit J.

12. During the course of the Commission's investigation, I caused our paralegal staff to download a copy of Alternate Energy Holdings, Inc.'s Form 10-K for fiscal year 2008, filed on March 31, 2009, from the Bloomberg website, excerpts of which are attached hereto as Exhibit K.

13. The 2008 Form 10-K (Exhibit K) includes the following statement on page 11: "The Company may need to obtain loans to fund any amounts not funded by private placement subscriptions." Exhibit K includes the following statements on page 18: "AEHI has minimum liquid assets at December 31, 2008, and will be reliant upon stock offerings to fund any kind of nuclear operations. . . . The monies raised by any private offering may not be sufficient for the continued proposed operations of AEHI."

14. During the course of the Commission's investigation, the Commission obtained records of accounts, account statements, and other relevant material from UBS on October 19, 2010, October 22, 2010, November 5, 2010, and November 19, 2010. Attached hereto is the Declaration Certifying Records by Alexandra Dudour as Exhibit L.

15. During the course of the Commission's investigation, the Commission obtained the Private Placement Memorandum for Alternate Energy Holdings, Inc. dated March 31, 2009, from the website www.scribd.com, attached hereto as Exhibit M. During the course of the Commission's investigation, I caused the staff to review Scribd's website, which states that Scribd is an online reading and publishing company that allows users to upload content.

16. During the course of the Commission's investigation, the Commission obtained the Certification of Organization of Limited Liability for Energy Executive Consulting, LLC, dated December 21, 2009, from the Idaho Secretary of State, attached hereto as Exhibit N.

17. During the course of the Commission's investigation, I caused our paralegal staff to download a copy of the Alternate Energy Holdings, Inc.'s Form 10-K for fiscal year 2009, filed on March 31, 2010, from the Bloomberg website, excerpts of which are attached hereto as Exhibit O.

18. The 2009 Form 10-K (Exhibit O) contains the following statements at page 1: "Alternate Energy Holdings, Inc. ("AEHI", or "the Company") was incorporated in the State of Nevada, and is a development stage enterprise engaged in the purchase, optimization and construction of green energy sources, primarily nuclear power plants. . . . The Company went public through a reverse merger in September of 2006, and its common shares are traded on the OTC Bulletin Board ("AEHI.BB"). Our corporate offices are at 911 E. Winding Creek Dr., Suite 150, Eagle, ID 83616. . . . Idaho Energy Complex was formed to oversee a proposed $10 billion nuclear project near Payette, Idaho. . . . The Company is currently working with China National Nuclear Corporation to develop and build a desalinization reactor to market to developing countries needing potable water and electricity." Exhibit O contains the following statement at page 14: "The Company is a development stage business, with no revenue to date."

19. Exhibit O contains the following statement at page 22: "The Company had minimum liquid assets as of December 31, 2009, and will be reliant upon stock offerings to fund any kind of nuclear operations." Exhibit O contains the following statement at page 34: "A past nuclear utility senior executive and current Chairman, Mr. Gillispie has served as President and Chief Executive Officer of the Company since inception." Exhibit O contains the following statement at page 35: "Ms. Ransom became Vice President of Administration and Corporate Secretary in May 2008." Exhibit O contains the following statement at page 39: "During the year ended December 31, 2009, Mr.Gillispie received . . . $133,000 of other compensation consisted of expense allotment for travel, auto, Idaho living expenses, entertainment."

20. During the course of the Commission's investigation, the Commission obtained the Private Placement Memorandum for Alternate Energy Holdings, Inc. dated April 12, 2010, from UBS, attached hereto as Exhibit P.

21. During the course of the Commission's investigation, the Commission obtained the Private Placement Memorandum for Reactor Land Development, dated April 30, 2010, from the website www.scribd.com, attached hereto as Exhibit Q.

22. During the course of the Commission's investigation, the Commission obtained an email, sent from Jennifer Ransom to Richard P. Hammond, dated May 21, 2010, from UBS. That email is attached hereto as Exhibit R.

23. During the course of the Commission's investigation, the Commission obtained an email sent from Richard P. Hammond to Don Gillispie, dated June 6, 2010, from UBS. That email is attached hereto as Exhibit S.

24. During the course of the Commission's investigation, the Commission obtained an email sent from Don Gillispie to Richard P. Hammond, cc'ing Brian J. Buck, dated June 14, 2010, from UBS. That email is attached hereto as Exhibit T.

25. During the course of the Commission's investigation, the Commission obtained an email sent from Don Gillispie to Richard P. Hammond, dated June 28, 2010, from UBS. That email is attached hereto as Exhibit U.

26. During the course of the Commission's investigation, the Commission obtained an email sent from Don Gillispie to Richard P. Hammond, dated July 14, 2010, from UBS. That email is attached hereto as Exhibit V.

27. During the course of the Commission's investigation, the Commission obtained an email sent from Richard P. Hammond to Don Gillispie, dated July 19, 2010, from UBS. That email is attached hereto as Exhibit W.

28. During the course of the Commission's investigation, the Commission obtained an email sent from Richard P. Hammond to Don Gillispie, dated July 21, 2010, from UBS. That email is attached hereto as Exhibit X.

29.     During the course of the Commission's investigation, the Commission obtained a letter sent from Rick J. Bucci, Alternate Energy Holdings, Ink's CFO, to UBS Mortgage Company, dated August 13, 2010, from UBS. That email is attached hereto as Exhibit Y.

30.     During the course of the Commission's investigation, the Commission obtained an email sent from Don Gillispie to Richard P. Hammond, dated September 3, 2010, from UBS. That email is attached hereto as Exhibit Z.

31.     During the course of the Commission's investigation, I caused our paralegal staff to download a copy of Alternate Energy Holdings, Inc.'s press release dated September 7, 2010, from Alternate Energy Holdings, Inc.'s website, attached hereto as Exhibit AA.

32.     During the course of the Commission's investigation, the Commission obtained an email sent from Don Gillispie to Richard P. Hammond, dated September 8, 2010, from UBS. That email is attached hereto as Exhibit BB.

33.     During the course of the Commission's investigation, the Commission obtained the Private Placement Memorandum for Alternate Energy Holdings, Inc. dated September 15, 2010, from UBS, attached hereto as Exhibit CC.

34.     During the course of the Commission's investigation, I caused our paralegal staff to download a copy of Alternate Energy Holdings, Inc.'s press release dated September 30, 2010, from Alternate Energy Holdings, Inc.'s website, attached hereto as Exhibit DD.

35.     During the course of the Commission's investigation, I caused the staff to download a copy of Alternate Energy Holdings, Inc.'s press release dated October 14, 2010, from Alternate Energy Holdings, Inc.'s website, attached hereto as Exhibit EE.

36.     During the course of the Commission's investigation, I caused the staff to download a copy of the Pinnacle Digest online magazine interview of Donald Gillispie dated October 14, 2010 from Pinnacle Digest's website, attached hereto as Exhibit FF.  During the course of the Commission's investigation, I caused the staff to review Pinnacle Digest's website, which states that Pinnacle is an exclusive online financial newsletter for investors.

37. During the course of the Commission's investigation, I caused the staff to download a transcript of the Wall Street Reporter audio interview of Donald Gillispie dated November 12, 2010 from the Wall Street Reporter website. That article is attached hereto as Exhibit GG.

38. During the course of the Commission's investigation, I caused our paralegal staff to download a copy of Alternate Energy Holdings, Inc.'s Form 10-Q for the quarter ended September 30, 2010, filed with the Commission on November 15, 2010, from the Bloomberg website. Excerpts are attached hereto as Exhibit HH.

39. Exhibit HH contains the following statement on page 15: "During the nine months ended September 30, 2010 and 2009, we did not recognize any revenues from our operations."

40. During the course of the Commission's investigation, I received the email dated November 24, 2010, attached hereto as Exhibit II.

41. During the course of the Commission's investigation, the Commission obtained a promotional fax for Alternate Energy Holdings, Inc. dated December 6, 2010. A copy of that advertisement is attached hereto as Exhibit JJ.

42. During the course of the Commission's investigation, I caused our paralegal staff to download a copy of the list of all press releases issued by Alternate Energy Holdings, Inc. from the company's website (www.alternateenergyholdings.com). A copy of that list is attached hereto at Exhibit KK.

43. During the course of the Commission's investigation, I caused our paralegal staff to download the current stock quote of Alternate Energy Holdings, Inc. from the Pink OTC Markets, Inc. website, www.otcmarkets.com, attached hereto at Exhibit LL.

44. During the course of the Commission's investigation, I caused our paralegal staff to download the historical stock prices, from January 4, 2010 to December 10, 2010, for Alternate Energy Holdings, Inc. from the Yahoo Finance website, attached hereto at Exhibit MM.

**Exhibits Filed Under Seal**

45. In the Commission's investigation of Alternate Energy Holdings, Inc. the Commission obtained records of accounts, account statements, and other relevant material from Mountain West Bank. Attached hereto is the Declaration Certifying Records by Renee Corrick as Exhibit NN. This contains redacted account numbers.

46. During the course of the Commission's investigation, the Commission obtained statements from Mountain West Bank for Energy Executive's account. The contents of these statements are voluminous and cannot conveniently be examined in court. I reviewed these statements, and I created a summary chart that lists payments from AEHI to Energy Executive, attached hereto as Exhibit OO-1. This exhibit contains redacted account numbers.

47. During the course of the Commission's investigation, the Commission obtained statements from Mountain West Bank for Bosco Financial, LLC's account. The contents of these statements are voluminous and cannot conveniently be examined in court. I reviewed these statements, and I created a summary chart that lists payments from AEHI to Bosco, attached hereto as Exhibit OO-2. This exhibit contains redacted account numbers.

48. During the course of the Commission's investigation, the Commission obtained statements from UBS for Jennifer Ransom's brokerage account. The contents of these statements are voluminous and cannot conveniently be examined in court. I reviewed these statements, and I created a summary chart that lists Ransom's sales of AEHI stock, attached hereto as Exhibit OO-3. This exhibit contains redacted account numbers.

49. During the course of the Commission's investigation, the Commission obtained statements from Mountain West Bank for Energy Executive Consulting, LLC's account. The contents of these statements are voluminous and cannot conveniently be examined in court. I reviewed these statements, and I created a summary chart that lists selected payments from Energy Executive to third parties, attached hereto as Exhibit OO-4. This exhibit contains redacted account numbers.

50.     During the course of the Commission's investigation, the Commission obtained statements from Merrill Lynch for AEHI's account. The contents of these statements are voluminous and cannot conveniently be examined in court. I reviewed these statements, and I created a summary chart that lists payments from AEHI to Don Gillispie and Energy Executive, attached hereto as Exhibit OO-5. This exhibit contains redacted account numbers.

51.     FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from UBS a copy of account opening documents for Bosco Financial, LLC dated September 28, 2009, attached hereto as Exhibit PP.

52.     FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from UBS a copy of account opening documents for Energy Executive Consulting, LLC dated September 28, 2009, attached hereto as Exhibit QQ.

53.     FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from UBS a copy of an Alternate Energy Holdings check in the amount of $10,000.00, payable to Donald Gillispie and dated June 23, 2010, attached hereto as Exhibit RR.

54.     FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from UBS a copy of Donald Gillispie's June 2010 UBS brokerage statement, attached hereto as Exhibit SS.

55.     FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from UBS a copy of Brian Webb's July 2010 UBS brokerage statement, attached hereto as Exhibit TT.

56.     FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from UBS a copy of an Alternate Energy Holdings, Inc. check in the amount $180,000.00, payable to Bosco Financial LLC, and dated September 1, 2010, attached hereto as Exhibit UU.

57. FILED UNDER SEAL: During the course of the Commission's investigation, the Commission obtained from Mountain West Bank a copy of Energy Executive Consulting, LLC's September 2010 bank statement, attached hereto as Exhibit VV.

58. During the course of the Commission's investigation, the Commission obtained from UBS copies of checks payable to Alternate Energy Holdings, Inc. These checks are voluminous and cannot conveniently be examined in court. I caused our paralegal staff to calculate the total amount of those checks for April and May of 2010. The total amount was $4,661,868.00.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on December 14, 2010, in San Francisco, California.

*K.C. Allan Waldron* (signature)

K.C. Allan Waldron