# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 10-CV-00621-EJL-REB |
| Plaintiff, | **REPORT AND RECOMMENDATION RE:** |
| vs. | |
| ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLISPIE, and JENNIFER RANSOM, | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 166)** |
| Defendants, | **and** |
| | **MEMORANDUM DECISION AND ORDER RE:** |
| BOSCO FINANCIAL, LLC, and ENERGY EXECUTIVE CONSULTING, LLC, | **PLAINTIFF'S MOTION TO STRIKE (Docket No. 201)** |
| Relief Defendants. | **PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL AMENDED COMPLAINT (Docket No. 216)** |
| | **PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE (Docket No. 219)** |
| | **PLAINTIFF'S MOTION TO SEAL (Docket No. 222)** |

Currently pending before the Court are Plaintiff Securities and Exchange Commission's

(1) Motion for Summary Judgment Against Defendants Alternate Energy Holdings, Inc. and

Donald Gillispie (Docket No. 166); (2) Motion to Strike, and Objections to, Defendants' Joint

Statement of Disputed Material Facts (Docket No. 201); (3) Motion to File Supplemental

Amended Complaint, Pursuant to FRCP 15(d) (Docket No. 216); (4) Motion for Order to Show

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 1**

Cause and Order Freezing $2 Million Held by Black and Lobello, LLC (Docket No. 219); and

(5) Motion to Seal Certain Exhibits Filed Inadvertently (Docket No. 222).  Having carefully

considered the record, heard oral argument, and otherwise being fully advised, the undersigned

enters (1) a Report and Recommendation as to the Motion for Summary Judgment, and (2) a

Memorandum Decision and Order as to the Motion to Strike, Motion to File Supplemental

Amended Complaint, Motion for Order to Show Cause, and Motion to Seal.

## I.  GENERAL BACKGROUND

Plaintiff, the Securities and Exchange Commission (the "Commission') charges

Defendants Alternate Energy Holdings, Inc. ("AEHI") and its chief executive, Donald Gillispie

("Gillispie'), with a far-reaching scheme to defraud the investing public in violation of the

federal securities laws.  *See* Mem. in Supp. of MSJ, p. 1 (Docket No. 167).  Among other things,

the Commission alleges that AEHI, through Gillispie, illegally manipulated the public market

price for AEHI stock to create the illusion of value for new investors, failed to disclose and/or

made false reports in violation of reporting requirements, and concealed millions of dollars of

payments to himself and Defendant Jennifer Ransom ("Ransom").  *See id*.

Such allegations have led to the following claims raised by Plaintiff: (1) violations of

section 17(a) of the Securities Act against AEHI and Gillispie (First Claim for Relief); (2)

violations of section 10(b) of the Exchange Act and Rule 10b-5 against AEHI and Gillispie

(Second Claim for Relief); (3) violations of section 13(a) of the Exchange Act and Rule 13a-11

by AEHI (Third Claim for Relief); (4) aiding and abetting violations of 10(b) of the Exchange

Act and Rule 10b-5 against Gillispie and Ransom (Fourth Claim for Relief); (5) violations of

section 16(a) of the Exchange Act and Rule 16a-3 against Gillispie and Ransom (Fifth Claim for

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 2**

Relief); and (6) violations of sections 5(a) and 5(c) of the Securities Act by AEHI and Gillispie (Sixth Claim for Relief).  *See* Am. Compl. at ¶¶ 86-103 (Docket No. 87).

The Commission's Motion for Summary Judgment does not address all of its claims; rather the Commission is moving for summary judgment on its claims that AEHI and Gillispie conducted an illegal, unregistered stock offering, and that they repeatedly misled investors about the status of the AEHI's funding.  *See* Mem. in Supp. of MSJ, p. 1 (Docket No. 167).  These arguments speak to the Commission's First, Second, and Sixth Claims for Relief.[1]

## II.  REPORT

### A.    Plaintiff's Motion for Summary Judgment: Standard of Review

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual

---

[1]  On August 8, 2012 (after AEHI filed its opposition to the Commission's Motion for Summary Judgment), AEHI's counsel filed an unopposed "Motion to Leave to Withdraw as Counsel to [AEHI]."  *See* Mot. to Withdraw (Docket No. 202).  On September 6, 2012, the undersigned granted AEHI's counsel's request, pursuant to certain (since-satisfied) conditions dealing with notice to AEHI of its counsel's withdrawal.  *See* 9/6/12 Order (Docket No. 211) and 9/6/12 Cert. of Serv. (Docket No. 212).  In granting AEHI's request to withdraw, the Court gave AEHI 21 days to file a written notice "stating how and by whom it will be represented."  *See* 9/6/12 Order, p. 2 (Docket No. 211).  Moreover, the Court indicated that, "[p]ursuant to District of Idaho Local Civil Rule 83.6(c)(2), if [AEHI] fails to appear in this action, a default against such party shall be entered by the Court."  *See id*.  AEHI failed to appear after its counsel's withdrawal.  Therefore it is hereby recommended that the district judge enter a default against AEHI.  Despite the undersigned's recommendation that a default against AEHI be entered, the Court will nonetheless consider the arguments raised in its opposition to the Commission's Motion for Summary Judgment vis à vis the Commission's claims against Gillispie given the latter's joinder/incorporation of AEHI's arguments relating thereto.  *See* AEHI's Opp. to MSJ, p. 1 (Docket No. 197).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 3**

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id.* at 255) and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's]

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 4**

attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). A statement in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

**B.    Defendants' Alleged Violations of Securities Act Section 5 – Sixth Claim for Relief**

Section 5 of the Securities Act provides that it is unlawful for any person to use the channels of interstate commerce to sell a security unless a registration statement is in effect as to such security. *See* 15 U.S.C. § 77e(a). To establish a *prima facie* violation of Section 5, the Commission must prove three elements: (1) that the defendant directly or indirectly sold or offered to sell securities; (2) that no registration statement was in effect for the securities; and (3) that interstate means were used in connection with the offer or sale. *See* Mem. in Supp. of MSJ, p. 8 (Docket No. 167) (citing *SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004); *Murphy*, 626 F.2d at 640). Once the Commission has established a *prima facie* case, the burden shifts to the defendant to show that the securities were exempt from the registration requirement. *See* Mem. in Supp. of MSJ, p. 9 (Docket No. 167) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953)).

Arguing that (1) AEHI and Gillispie[2] offered and sold AEHI's common stock to hundreds of investors, (2) AEHI never filed a registration statement with the Commission concerning the issuance of any AEHI securities, and (3) AEHI and Gillispie utilized interstate commerce in selling AEHI securities, the Commission argues that it has established the *prima facie* elements of a Section 5 violation. *See id.* at pp. 9-10. In response, AEHI points out that

---

[2] As to individuals, such as Gillispie, the *prima facie* case is met when the person "engaged in steps necessary to" and was a "substantial factor in" an unregistered distribution. *See* Mem. in Supp. of MSJ, p. 9 (Docket No. 167) (citing *SEC v. Murphy*, 626 F.2d 633, 649-50 (9th Cir. 1980); *SEC v. Phan*, 500 F.3d 895, 906 (9th Cir. 2007)).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 5**

the Section 5 registration requirement does not apply to "transactions by an issuer not involving any public offering."  *See* AEHI Opp. to MSJ., p. 7 (Docket No. 189) (quoting 15 U.S.C.§ 77d(a)(2)); *see also SEC v. Murphy*, 626 F.2d 633, 640 (9th Cir. 1980) ("Section 5 of the 1933 Act forbids the offer or sale of unregistered securities in interstate commerce, . . . but [Section] 5 does not apply if the securities are exempt from registration as a private offering."). Implicitly then, AEHI and Gillispie contend that the at-issue offering(s) – represented by AEHI's private placement memoranda ("PPMs") – is/are, in fact, private offerings and, therefore, exempt from any registration requirement.[3]

In the Ninth Circuit, the question of whether a securities offering constitutes a public offering considers: "(1) the number of offerees, (2) the sophistication of the offerees, (3) the size and manner of the offering, and (4) the relationship of the offerees to the issuer."  *See Western Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984).  AEHI and Gillispie *presume* (though this Court is not necessarily convinced (*see infra*)) that the Commission seeks to establish the existence of a public offering here (at least toward establishing the first and third elements referenced immediately above) by arguing that AEHI's PPMs over time constituted a single, "integrated" offering and, more to the point, that issues of material fact exist to preclude such a conclusion.  *See, e.g.*, AEHI's Opp. to MSJ, p. 8 & 13 (Docket No. 189) ("Since the SEC has staked its Section 5 claim on a finding of integration . . . .").

Considering AEHI's argument in this respect, five factors guide the characterization of whether arguably separate offerings are effectively one integrated offering: (1) whether the

_____

[3] Exemptions from registration provisions are construed narrowly to further the purpose of the Securities Act:  "'To provide full and fair disclosure of the character of the securities, . . . and to prevent frauds in the sale thereof . . . .'"  *See Murphy*, 626 F.2d at 641 (9th Cir. 1980) (quoting Securities Act of 1933, Ch. 38, Tit. 1, 48 Stat. 74 (1933)).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 6**

offerings are part of a single plan of financing; (2) whether the offerings involve issuance of the

same class of securities; (3) whether the offerings are made at or about the same time; (4)

whether the same kind of consideration is to be received; and (5) whether the offerings are made

for the same general purpose.  *See Murphy*, 626 F.2d at 645.  AEHI contends that issues of fact

(relative to the first, third, and fifth factors only) prevent a finding as a matter of law that its

multiple offerings (via its PPMs) should be integrated into a single offering.  *See* AEHI's Opp. to

MSJ, pp. 9-12 (Docket No. 189).  On balance, the Court agrees.

As to the first factor – whether the offerings are part of a single plan of financing – AEHI

disputes the Commission's argument that its PPMs "purportedly sought to finance the initial

stages of its nuclear project."  *See id*. at p. 10 (citing Mem. in Supp. of MSJ, p. 11, n.2 (Docket

No. 167)).  Pointing to particular PPMs that allegedly identify different capital-raising projects,[4]

AEHI asserts that "each PPM identifies a list of varying . . . business activities of AEHI for the

use of the proceeds" and, "[f]urther, none of the PPMs were identical with respect to the projects

for which the offering was raising capital."  *See* Joint. Stmt. of Disp. Facts, No. 10 (Docket No.

190).  The Commission counters by noting that each PPM "seek[s] capital for AEHI's purported

nuclear project by one name or another," while also challenging AEHI's position in this point as

"simply a *post hoc* fabrication."  *See* Reply in Supp. of MSJ, pp. 8-9 (Docket No. 200).

Regardless, the ultimate denouement of the issue becomes one in which, where inferences are

---

[4] Within Exhibit A to Jane E. Nilan's Declaration, AEHI identifies these projects (and
their references to AEHI's corresponding PPMs) as (in alphabetical order): Advanced Nuclear
Plant Project, AEHI China Ltd., AEHI Korea, $CO_2$ Removal, Coal-Diesel Conversion, Colorado
Energy Park, Energy Neutral, Inc., Energy Saving Fuel Additive, Green World Water, Idaho
Energy Complex, Idaho Nuclear Power Project, International Reactor, Inc., Lightning
Harvesting, Tar Sands Reactor, and Urban Mini-Reactors.  *See* Ex. A to Nilan Decl. (Docket No.
191, Att. 1) ("I prepared Exhibit A by reviewing the contents of all of the Private Placement
memoranda ("PPMs") . . . and summarizing them in the attached chart.").

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 7**

considered in favor of the non-movant, the Court cannot properly rule as a matter of law. These various projects may or may not speak to a unified plan toward financing only AEHI's nuclear project.  AEHI is entitled to have a jury decide that question.

As to the third factor – whether the offerings are made at or about the same time – AEHI highlights the fact that the different offerings/PPMs sought funding over the course of more than four years.  *See* AEHI's Opp. to MSJ, p. 11 (Docket No. 189) ("An offering made *years* after the original offering should not be viewed as 'integrated' with it.") (emphasis in original).  This misses the point, according to the Commission, when "[t]he question of integration turns on the length of periods *between* offerings, not the total duration."  *See* Reply in Supp. of MSJ, p. 7 (Docket No. 200) (emphasis in original) (citing *Murphy*, 626 F.2d at 646 ("The separation in time from one system offering to the next suggest that the offerings were not integrated . . . .")).  The Commission correctly highlights the fact that the PPMs, each seeking to raise capital, persisted over long and overlapping periods of time (particularly when also recognizing that AEHI's consistent monthly stock sales apparently did not correlate with the timing of AEHI's referenced 23 offerings/PPMs (*see* Reply in Supp. of MSJ, pp. 7-8 (Docket No. 200)).  Nonetheless, in a summary judgment context, the Court is not prepared to say as a matter of law that, from beginning to end, the PPMs as a whole represent one integrated offering "made at or about the same time."  The arguably nuanced differences between each PPM (which the Commission does a commendable job attempting to discount – at least in certain instances (*see id*.)) is just too undeveloped by the existing record, leaving questions of material fact.  These relative unknowns, coupled with the reality that the allegedly integrated PPMs took place over a

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 8**

multi-year span (assuming the Commission even argues for integration (*see infra*)), prevent a finding of integration premised upon this factor.

As to the fifth factor – whether the offerings are made for the same general purpose – AEHI again argues, as it did in regard to the first factor (*see supra*), that "raising . . . money for various projects of the same company cannot equate with making offerings for the 'same general purpose.'" *See* AEHI's Opp. to MSJ, p. 12 (Docket No. 189).  For the reasons already discussed, the Court agrees (at least insofar as a question of fact exists to prevent a contrary finding as a matter of law (*see supra*)), especially when realizing, as AEHI notes, that AEHI's "projects" allegedly relate to different businesses in different markets – e.g., producing energy-efficient homes, lightening harvesting, a joint venture in China, and an energy park in Colorado.  *See* AEHI's Opp. to MSJ, p. 12, n.8 (Docket No. 189).

Thus, to the extent the Commission's Section 5 claim is conditioned upon a finding of integration, that claim must survive summary judgment given the presence of disputed facts relating thereto.  However, if *particular* (as opposed to integrated) PPMs are shown to represent public offerings requiring registration, summary judgment may be appropriate.  However, it is not clear if the Commission is attempting to make such an argument here.  *See, e.g.*, Mem. in Supp. of MSJ, pp. 11 & 12 (Docket No. 167) (stating that AEHI acknowledges sending "its offer to at least 850 individuals" and commenting that, "[w]ith large offerings like AEHI's that exceed $5 million . . . .").  Despite the burden that AEHI and Gillispie have at trial to prove an exclusion to the registration requirements (in this case, that the offerings are private, not public), to prevail in this procedural setting, it is the Commission's burden to show that certain PPMs are indeed public offerings with no corresponding registration statements.  *See Murphy*, 626 F.2d at 641

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 9**

("On a motion for summary judgment, however, 'it is the moving party who carries the burden of proof; he must show that no genuine issue of material fact exists . . . even though at trial his opponent would have the burden of proving the facts alleged' . . . .  Thus, the SEC was entitled to summary judgment *only if* it demonstrated that there was no genuine issue of material fact as to [defendant's] affirmative defense or that, viewing the evidence and the inferences which could be drawn therefrom in the light most favorable to [defendant], the SEC was clearly entitled to prevail as a matter of law.") (citing *Doff v. Brunswick Corp.*, 372 F.2d 801, 805 (9th Cir. 1996) (emphasis added).

The Commission has not satisfied such a burden.  Here, the current record does not support a finding that specific PPMs were, in fact, public offerings (admittedly beyond the elements needed for the Commission to establish a *prima facie* case, but nonetheless necessary in order to prevail on summary judgment), capable of supporting a Section 5 violation.  As AEHI puts it: "Plaintiff simply has not proffered any evidence to prove (1) the number of offerees for any particular offering, (2) whether that number supports a finding that the offering was a public offering, and (3) how the factor of the number of offerees would be weighed in balancing it with the other factors for determining the existence of a public offering."  *See* AEHI's Opp. to MSJ, pp. 13-14 (Docket No. 189); *see also id.* at pp. 14-18 (discussing additional inability to gauge (1) offerees' sophistication (or if exemption applies dealing with non-accredited investors), (2) size and manner of offering, and (3) relationship of offerees to issuer without examining PPMs individually).  In short, the Commission's failure to comprehensively dissect individual PPMs toward satisfying the factors comprising a related public offering preclude a finding that AEHI and Gillispie violated Section 5 of the Securities Act at this time.  The Court acknowledges that

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 10**

such an effort would be a time-consuming one, and perhaps that fact is why the Commission

chose not to approach individual PPMs as a basis for seeking summary judgment upon the

claims in its Complaint.  But, it is the Commission's chore, no one else's, and if it is not done,

the Court cannot conjure up a substitute.

        The Court does not suggest in such an observation, or make any finding (or even an

endorsement) that the PPMs are limited, purely private offerings – if anything, the current record

implies to the contrary.  Even so, AEHI's arguments, combined with the lacking record thus far,

inject a level of uncertainty that prevents a finding as a matter of law on the issue.  It is therefore

recommended that the Commission's Motion for Summary Judgment be denied in this limited

respect.[5]

**C.      Defendants' Alleged Violations of Securities Act Section 17(a) and Exchange Act
          Section 10(b), and Rule 10b-5 – First and Second Claims for Relief**

        The parties do not dispute the underlying law applicable to the Commission's fraud

claims.  Section 10(b) of the Exchange Act and Rule 10b-5 make it:

> unlawful for any person, directly or indirectly, by the use of any means or
> instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange, [t]o make any untrue statement of material fact or to
> omit to state a material fact necessary in order to make the statements made, in the
> light of the circumstances under which they were made, not misleading . . . in
> connection with the purchase or sale of any security.

*See* 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5(b).  Similarly, Section 17(a)(2) of the Securities

Act makes it "unlawful for any person, directly or indirectly, in the offer or sale of any securities

---

        [5]  Because the undersigned's recommendation in this regard is independent of the
admissibility of certain materials objected to by AEHI (*see* AEHI's Opp. to MSJ, pp. 3-7
(Docket No. 189) (arguing that "numerous documents" offered in support of Commissioner's
Motion for Summary Judgment are inadmissible)), the Commission's related Motion to Strike
(Docket No. 201) is rendered moot.  Therefore, it is hereby ordered that the Commission's
Motion to Strike is denied.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 11**

. . . to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading . . . ."  *See* 15 U.S.C. § 77q(a)(2).[6]

Violations of Exchange Act Section 10(b) and Rule 10b-5 require proof of scienter, defined as a "knowing or intentional" misconduct.  *See Ernst & Ernst v. Hochfielder*, 425 U.S. 185, 193, 197-99 (1976).  Proof of scienter may be satisfied by evidence of recklessness, defined as misconduct that is "so obvious that the actor must have been aware of it."  *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990); *see also Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010) ("Scienter may be established, therefore, by showing that the defendants knew their statements were false, or by showing that defendants were reckless as to the truth or falsity of their statements.").[7]  However, scienter is not necessary to prove violations of Securities Act Section 17(a)(2); rather, proof of negligence is required.  *See Aaron v. SEC*, 446 U.S. 680, 701-02 (1980); *Phan*, 500 F.3d 895, 908.

Arguing that, even while AEHI repeatedly acknowledged that adequate funding was critical to its plans to build a nuclear power plant in Idaho, the Commission contends that AEHI

---

[6]  Under either Section/Rule, "the standard of materiality is an objective one" – "[a] statement is material if 'a reasonable investor would have considered it useful or significant.'"  *See United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011) (quoting *United States v. Smith*, 155 F.3d 1051, 1064 (9th Cir. 1998)).  When materiality is contested, summary judgment is proper "only if materiality is 'so obvious that reasonable minds [could] not differ'."  *See Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) (quoting *Fecht v. Price*, 70 F.3d 1078, 1080 (9th Cir. 1995)); *see also Phan*, 500 F.3d 895, 908 ("The antifraud provisions' materiality element is satisfied only if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'") (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

[7]  "[S]ummary judgment on the scienter issue is appropriate *only* where 'there is no rational basis in the record for concluding that any of the challenged statements was made with requisite scienter.'"  *Provenz*, 102 F.3d at 1490 (quoting *In re Software Toolworks*, 38 F.3d 1078, 1088 (9th Cir. 1994)).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 12**

"never obtained funding for the nuclear project."  *See* Mem. in Supp. of MSJ, p. 5 (Docket No.

167) ("From inception through the end of 2010, AEHI's financial statements reflected no

financing other than from the proceeds of its unregistered offering.").  Yet, pointing to AEHI's

PPMs, press releases, and at least one letter to shareholders, the Commission argues that AEHI

"announced to investors and the market that it had secured funding for its project."  *See id*.  For

example:

- AEHI's June 4, 2007 PPM stated that the Idaho Energy Complex "**has obtained $3.5 billion in funding.**"  *See* Ex. 5 to Tashjian Decl. (Docket No. 174) (emphasis in original).

- AEHI's December 1, 2008, February 13, 2009, September 9, 2009, and December 31, 2009 PPMs stated that the Idaho Energy Complex "is funded and seeking NRC approval."  *See* Ex. 10, 13-15 to Tashjian Decl. (Docket Nos. 174 & 175).

- AEHI's January 13, 2009 PPM stated that the Idaho Energy Complex "has funding arrangements and is seeking process approvals."  *See* Ex. 11 to Tashjian Decl. (Docket No. 174).[8]

- On June 26, 2007, AEHI issued a press release titled "**Alternate Energy Holdings (AEHI) Secures $3.5 Billion in Funding for Proposed Idaho Energy Complex**."  *See* Ex. 17 to Tashjian Decl. (Docket No. 175) (emphasis in original).  The press release went on to state that Cobblestone Financial Group, Inc. ("Cobblestone") "has provided the company with a letter of intent to fund 100% of AEHI's proposed Idaho Energy Complex (IEC), estimated at $3.5 billion."  *See id*.[9]

---

[8]  The Commission claims that Gillispie distributed the PPMs in e-mail messages soliciting investment in AEHI.  *See* UF No. 16 (Docket No. 168) (referencing Exs. 24-25, 27-28, 32-35 to Tashjian Decl. (Docket Nos. 175-177)).

[9]  In actuality, Cobblestone "provided a letter of intent to *arrange* 100% financing of cost for the IEC project . . . ."  *See* Ex. 63 to Tashjian Decl. (Docket No. 186).  To be sure, in a subsequent "Financing Agreement and Engagement Letter," AEHI "acknowleldge[d] and agree[d] that Cobblestone does not guarantee that a [funding] Commitment can be obtained."  *See* Ex. 64 to Tashjian Decl. (Docket No. 186).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 13**

- On December 6, 2007, AEHI issued a press release titled "**AEHI Receives $150 Million Private Placement Commitment Letter for Idaho Nuclear Reactor Project**." *See* Ex. 18 to Tashjian Decl. (Docket No. 175) (emphasis in orginal).   According to the press release, AEHI had received a $150 Million "commitment letter" from Silverleaf Capital Partners, LLC ("Silverleaf") and that "AEHI will allocate these funds for the purchase of the nuclear plant site." *See id*.  Moreover, within the press release, Gillispie stated that "[t]his provides the initial funding to launch an important project for Idaho and western energy needs." *See id*.[10]

- Despite earlier claims that the Idaho Energy Complex was already funded (*see supra*), on June 5, 2009, AEHI issued a press release titled "**AEHI Signs Agreement with Source Capital Group to Fund Idaho Nuclear Site**." *See* Ex. 19 to Tashjian Decl. (Docket No. 175) (emphasis in original).

- On September 9, 2009, Gillispie sent a signed letter to AEHI shareholders, discussing AEHI's progress towards completing the Idaho nuclear power plant and claiming that "[w]e have a funding commitment from Source Capital for the site." *See* Ex. 20 to Tashjian Decl. (Docket No. 175).

*See* Mem. in Supp. of MSJ, pp. 5-7 (Docket No. 167).

According to the Commission, these announcements constituted knowing and/or reckless material misrepresentations in violation of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5.  *See* Mem. in Supp. of MSJ, pp. 16-20. (Docket No. 167).  The undersigned agrees.

First, (1) PPMs containing statements that AEHI "has obtained $3.5 billion in funding," "is funded and seeking NRC approval," and "has funding arrangements and is seeking process

---

[10]  Though less egregious than the Cobblestone press release, the "commitment letter" from Silverleaf did not provide funding for AEHI as the press release hints; instead, the agreement with Silverleaf contemplated that the parties would use their "best efforts to complete due diligence and preparation of Equity Investment documents."  *See* Ex. 22 to Tashjian Decl. (Docket No. 175).  It is unclear whether AEHI seeks to strike Exhibit 22.  On the one hand, AEHI seeks its exclusion (*see* AEHI Opp. to MSJ, p. 4 (Docket No. 189)); on the other hand, Gillispie invites the Court to compare Exhibit 22 to the press release (*see* Gillispie Opp. to MSJ, p. 7 (Docket No. 197)).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 14**

approvals"; along with (2) press release headlines touting that AEHI secured $3.5 billion in

funding, received a $150 million private placement commitment letter, and signed an agreement

with Source Capital Group (reiterated in a letter to shareholders) suggest that AEHI's Idaho

Energy Complex was either actually funded or well on its way to being funded.[11]  At best, such

statements are misleading; at worst, they are outright false.  They flatly misstate the true status of

AEHI's funding since there is no dispute that the Idaho Energy Complex was never funded.  *See,

e.g.*, Gillispie Depo. at 192:25-193:13, attached as Ex. 48 to Tashjian Decl. (Docket No. 182)

(acknowledging that, as of March 31, 2009, Idaho Energy Complex was not funded).[12]

Second, funding was critical to AEHI's existence.  Therefore, statements descriptive of

historical fact that relate to AEHI's funding would no doubt be considered useful or significant

to a reasonable investor in AEHI and, therefore, material.[13]  The only reasonable inference for

---

[11]  Gillispie's characterization of the PPMs statements as "nonsensical" and/or that they must have been "altered" (*see* Gillispie Opp. to MSJ, p. 9 (Docket No. 197)) is unpersuasive when considering the number of such statements and their consistency with related press releases.

[12]  Additionally, Gillispie asserted the Fifth Amendment privilege when questioned about the PPMs' "funding references" (as well as Cobblestone, Silverleaf, Source Capital Group, and the September 9, 2009 letter to investors).  *See* Gillispie Depo. at 24:13-41:3; 70:10-71:11; 71:12-74:17; 78:16-79:14, attached as Ex. 50 to Tashjian Decl. (Docket No. 182).  It is true that "'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'"  *See SEC v. Jasper*, 678 F.3d 1116, 1125 (9th Cir. 2012) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).  However, courts should "analyz[e] each instance where the adverse inference was drawn, or not drawn, on a case-by-case basis under the microscope of the circumstances of that particular civil litigation. . . . .  In each particular circumstance, the competing interest of the party asserting the privilege, and the party against whom the privilege is invoked must be carefully balanced."  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000).  Though not necessary here, given the existence of additional evidence within the record supporting the fact that AEHI, through Gillispie, made untrue statements of fact, such an inference would likely apply here.

[13]  Gillispie responds that there is no "evidence that any investor in fact . . . was mislead by [the statements] or confused by them, or considered them to be important to his or her

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 15**

the inclusion of such statements within the above-described PPMs and press releases was to encourage people to invest money in AEHI – the essence of materiality.[14]  From the undersigned's perspective, these statements' materiality is so obvious under the circumstances presented by the record that reasonable minds could not differ.  *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (omissions and/or misrepresentations are material as matter of law if they involve facts that are "'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality'") (quoting *Johns Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970)); *Murphy*, 626 F.2d at 653 ("Surely the materiality of information relating to financial condition, solvency, and profitability is not subject to serious challenge."); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (false statements regarding financing "amply satisfy the materiality element of a securities fraud claim.").

Third, a reasonable juror could not find that Gillispie lacked sufficient scienter.  As the founder, CEO, and Chairman of AEHI, Gillispie was aware of the false statements contained within AEHI's PPMs he disseminated.  Further, he wrote the deceptive press releases and letter to AEHI investors.  Gillispie knew that AEHI had not secured funding, yet created the illusion of just the opposite to mislead investors and secure their money.  At the very least, Gillispie acted with a reckless disregard for the truth when he made the misstatements in connection with

---

investment decision.  *See* Gillispie Opp. to MSJ, pp. 10-11 (Docket No. 197).  However, reliance on false statements is not an element of the Commission's fraud claim.  *See SEC v. Rana Research Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1993) (unlike private plaintiff, SEC is not required to establish reliance for Section 10b or Rule 10b-5 securities fraud action).

[14]  Contrary to Gillispie's arguments (*see* Gillispie Opp. to MSJ, pp. 7-8, 10 (Docket No. 197)), "risk disclosures" in the PPMs and "safe harbor" language in the press releases do not undo the fact that those PPMs and press releases paint AEHI's funding as a current, up-to-date fact.  Nowhere do they disclose that AEHI had actually not obtained funding.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 16**

offering AEHI securities.  Such conduct sufficiently represents scienter under the Exchange Act while necessarily subsuming Gillispie's negligence under the Securities Act.

Because the undersigned finds that Gillispie knowingly and/or recklessly made material misrepresentations in violation of the Exchange Act and Securities Act, it is therefore recommended that the Commission's Motion for Summary Judgment be granted in this limited respect.

## III.  ANALYSIS

**A.     Plaintiff's Motion to File Supplemental Amended Complaint**

On or around November 1, 2012, the Commission filed its Motion to File Supplemental Amended Complaint, Pursuant to FRCP 15(d).  The Commission's proposed Supplemental Amended Complaint "seeks the freeze and transfer of $2 million that AEHI recently transferred to Relief Defendant Black & LoBello, LLC pursuant to an undisclosed sham transaction that dissipated nearly all of AEHI's remaining investor funds."  *See* Proposed, Supp. Am. Compl., ¶ 5 (Docket No. 216, Att. 1); *see also infra*.

Responses to the Commission's effort to amend its pleadings were due on or before November 26, 2012.  To date, no existing party has objected and, similarly, during the Court's January 9, 2013 oral argument, no existing party expressed any objection to the Commission's request.  *See* Dist. Idaho Loc. Civ. R. 7.1(e)(1) ("[I]f an adverse party fails to timely file any response documents required to be filed under this rule, such failure may be deemed to constitute a consent to the . . . granting of said motion . . . .").

Therefore, Plaintiff's Motion to File Supplemental Amended Complaint (Docket No. 216) is hereby granted.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 17**

**B.      Plaintiff's Motion for Order to Show Cause and Order Freezing $2 Million Held by Black and Lobello, LLC**

In June 2012, AEHI and Hamilton Guaranty Capital, LLC ("Hamilton") entered into a Financial Service Agreement (the "Financial Service Agreement") that required approximately $2 million (the "Advance Payment") to be deposited by AEHI into an escrow account controlled by Black & Lobello, LLC ("Black and Lobello"), a Las Vegas, Nevada law firm.  Shortly after the Advance Payment was deposited with Black & Lobello, a dispute arose between AEHI and Hamilton concerning the terms of the Financial Service Agreement and the party that was entitled to receive the Advance Payment.  In August 2012, after receiving conflicting demands for the Advance Payment, Black & Lobello filed a Complaint for Interpleader against AEHI and Hamilton in Nevada state court.  In September 2012, the Nevada state court ordered that (1) the Advance Payment be placed in a blocked account that cannot be accessed without further order of the court, and (2) that the matter be resolved by mandatory binding arbitration pursuant to the terms of the Financial Service Agreement.

Through its Motion for Order to Show Cause and Order Freezing $2 Million Held by Black and Lobello, LLC ("Motion to Freeze"), the Commission argues that, in direct contravention to this Court's February 14, 2011 Order on Order to Show Cause,[15] Gillispie

_____

[15] In relevant part, Judge Lodge's February 14, 2011 Order on Order to Show Cause states:

> Defendant AEHI agrees that it shall, within thirty (30) days of this Order, and every thirty (30) days thereafter unless ordered otherwise by this Court, provide to the Commission a complete and accurate accounting of all of its expenditures that equal or exceed $2,500.00 (the "Monthly Accounting").  The expenditures covered by the Monthly Accounting shall include, but not be limited to, transactions that have the effect of transferring, assigning, selling, hypothecating, changing, wasting,

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 18**

secretly transferred the $2 million Advance Payment to Black and Lobello's escrow account.  As

a result, the Commission moves for an order (1) directing AEHI and Gillispie to show cause why

they should not be held in contempt of the Court's February 14, 2011 Order, and (2) freezing the

$2 million held in Black and Lobello's escrow account, "thereby preserving the funds from

waste and dissipation until further order of this Court."  *See* Mot. to Freeze, p. 1 (Docket No.

219).

As indicated during the January 9, 2013 hearing, the Court chose not to hear argument on

the issue of AEHI's and/or Gillispie's alleged contempt.[16]  As to this Court's authority to freeze

the $2 million Advance Payment that is already the subject of an interpleader action in another

court, the undersigned questions his inherent jurisdiction to grant the relief the Commission now

seeks – even if inclined to do so.  In other words, it has not been shown (and the undersigned is

likewise not convinced) that this Court can order either (1) the Nevada state court to follow this

Court's direction concerning the distribution of the interpleaded funds, or (2) Black and Lobello

not to disburse those amounts to a party found to be entitled to the same following an arbitration

award or order of the court.

---

   dissipating, converting, concealing, encumbering, or otherwise disposing of, in any
manner, funds, assets, securities, claims, or other property wherever located and for
any purpose. . . . .

*See* 2/14/11 Order at ¶ 6, pp. 3-4 (Docket No. 56).  The Commission argues that "AEHI did not
provide the Commission with an accounting of the transfer of funds, nor did it disclose the
commitment of funds to its shareholders or the investing public" in violation Judge Lodge's
Order.  *See* Mot. to Freeze, p. 1 (Docket No. 219).

  [16]  Therefore, at this time, the Court will deny as moot the Commission's Motion to
Freeze in this limited respect.  Upon resolution of the alternate issue raised within the Motion to
Freeze (the handling of the $2 million Advance Payment), the Commission is free to renew its
contempt arguments at a later date.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 19**

Therefore, to address the Commission's concerns, while still keeping intact all relevant parties' interests in the Advance Payment while the Nevada state court proceeding runs its separate course, this Court orders that, once either an informal agreement between AEHI and Hamilton is reached, an arbitration award is issued, or a court order is entered regarding the $2 million Advance Payment's apportionment (whichever occurs first, even if preceding a court order disposing of the interpleader action or confirming any arbitration award), (1) Gillispie and AEHI[17] immediately inform this Court of the status relating thereto (through a formal filing in this action, served upon all parties to this action), and (2) any and all funds reverting back to AEHI be frozen until either AEHI, Gillispie, and/or the Commission moves to set aside this Order freezing those funds.  Until then, AEHI and Gillispie may not expend such funds.[18] The Commission's Motion to Freeze is therefore granted in this limited respect.[19]

## IV.  RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Default be entered against AEHI;

---

[17] The Court realizes that this Decision recommends that AEHI be defaulted from this action.  Therefore, to the extent the Court's Order in this respect speaks to AEHI, the Court maintains continuing jurisdiction over it for this specific purpose.  Regardless, any duty owed by AEHI is similarly shared by Gillispie and subject to this Court's mandate.

[18] The Court recognizes the potential need to utilize those funds sooner rather than later in order to support particular business needs moving forward.  With that in mind, if necessary, AEHI and/or Gillispie are free to file an emergency motion seeking relief from this Court's order, while requesting this Court's immediate consideration.  Under such a circumstance, the Court expects to hold a hearing to resolve the matter, after expedited briefing on the issue.  In any event, the parties also must continue to comply with Judge Lodge's February 14, 2011 Order on Order to Show Cause (*see supra*).

[19] The Commission's related, unopposed Motion to Seal Certain Exhibits Filed Inadvertently (Docket No. 222) is hereby granted.

REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 20

2.     The Commission's Motion for Summary Judgment Against Defendants Alternate

Energy Holdings, Inc. and Donald Gillispie (Docket No. 166) be GRANTED, in part, and

DENIED, in part, as follows:

a.     The Commission's Motion for Summary Judgment be DENIED as to

Gillispie's alleged violations of Securities Act Section 5 – Sixth Claim for Relief; and

b.     The Commission's Motion for Summary Judgment be GRANTED as to

Gillispie's alleged violations of Securities Act Section 17(a) and Exchange Act Section 10(b),

and Rule 10b-5 – First and Second Claims for Relief.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a

Magistrate Judge's recommended disposition "must serve and file specific, written objections,

not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district

judge sets a different time period."  Additionally, the other party "may serve and file a response,

not to exceed ten pages, to another party's objections within fourteen (14) days after being

served a copy thereof."

## V. <u>ORDER</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     The Commission's Motion to Strike, and Objections to, Defendants' Joint

Statement of Disputed Material Facts (Docket No. 201) is DENIED;

2.     The Commission's Motion to File Supplemental Amended Complaint, Pursuant to

FRCP 15(d) (Docket No. 216) is GRANTED;

3.     The Commission's Motion for Order to Show Cause and Order Freezing $2

Million Held by Black and Lobello, LLC (Docket No. 219) be GRANTED, in part, and

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 21**

DENIED, in part, as follows:

      a.    The Commission's Motion for Order to Show Cause be DENIED as moot, without prejudice to re-submit at a later date; and

      b.    The Commission's Motion for Order Freezing $2 Million Held by Black and Lobello LLC be GRANTED only insofar as, to the extent any funds revert back to AEHI after the Nevada Court resolves the interpleader action, and at the moment of such event, those funds shall be frozen until either AEHI, Gillispie, and/or the Commission moves to set aside this Order freezing those funds.  The Commission's request in all other respects is DENIED.

    4.    The Commission's Motion to Seal Certain Exhibits Filed Inadvertently (Docket No. 222) is GRANTED.

DATED:  **March 13, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 22**