UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 1:10-CV-00621-EJL-REB |
| Plaintiff, | |
| v. | MEMORANDUM DECISION AND ORDER |
| ALTERNATE ENERGY HOLDINGS, INC., DONALD L. GILLISPIE, and JENNIFER RANSOM, | |
| Defendants, | |
| and | |
| BOSCO FINANCIAL, LLC, and ENERGY EXECUTIVE CONSULTING, LLC, | |
| Relief Defendants. | |

**INTRODUCTION**

On April 13, 2013, United States Magistrate Judge Ronald E. Bush issued a Report and Recommendation ("Report"), recommending that default be entered against Defendant Alternate Energy Holdings, Inc. and that Plaintiff's Motion for Summary Judgment be granted in part and denied in part. (Dkt. 242.) In the same document, Magistrate Judge Bush issued an Memorandum Decision and Order ("Order") regarding Plaintiff's Motion to Strike, Motion to File Supplemental

Amended Complaint, Motion for Order to Show Cause and Freeze, and Motion to Seal. (Dkt. 242.)

Any party may challenge a magistrate judge's proposed recommendation by filing written objections to the Report within fourteen days after being served with a copy of the same. *See* 28 U.S.C. § 636(b)(1); Local Civil Rule 72.1(b). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate judge. *Id.*; *see also* Fed. R. Civ. P. 72(b).

Defendant Donald L. Gillispie filed objections to the Report arguing it incorrectly concluded as a matter of law that summary judgment should be granted as to Plaintiff's First and Second Claims for Relief. (Dkt. 244.) Plaintiff, the Securities and Exchange Commission ("SEC"), also filed objections to the Report arguing the Court should enter summary judgment on its Sixth Claim for Relief and that this Court should order that certain assets be frozen as requested. (Dkt. 243.) The matter is now ripe for the Court's consideration. *See* Local Civil Rule 72.1(b)(2); 28 U.S.C. § 636(b)(1)(B).

## FACTUAL AND PROCEDURAL BACKGROUND

The SEC, initiated this action by filing a Complaint raising allegations of federal securities law violations against Defendants Alternate Energy Holdings, Inc. ("AEHI"), its founder and Chief Executive Officer, Donald Gillispie, and its

Senior Vice-President of Administration and Secretary, Jennifer Ransom. (Dkt. 1, 87.) Also named are the Relief Defendants Bosco Financial, LLC ("Bosco") and Energy Executive Consulting, LLC ("Energy Executive").

In the Second Amended Complaint the SEC raises claims for: 1) Violations of Section 17(a) of the Securities Act by AEHI and Gillispie; 2) Violations of Section 10(b) of the Exchange Act and Rule 10b-5 by AEHI and Gillispie; 3) Violations of Section 13(a) of the Exchange Act and Rule 13a-11 by AEHI; 4) Aiding and Abetting Violations of 10(b) of the Exchange Act and Rule 10b-5 by Gillispie and Ransom; 5) Violations of Section 16(a) of the Exchange Act and Rule 16a-3 by Gillispie and Ransom; and 6) Violations of Section 5(a) and 5(c) of the Securities Act by AEHI and Gillispie. (Dkt. 87.)

The claims generally relate to the Defendants' alleged illegal manipulation of the public market price for AEHI stock and defrauding of individuals who purchased the company's stock. (Dkt. 87.) The SEC alleges the Defendants engaged in a "pump and dump scheme" whereby they pumped up the price and volume of AEHI's stock to artificially high levels and then dumped the stock through secret sales. In particular, the SEC alleges the Defendants used mass email distributions of offering documents called Private Placement Memoranda ("PPMs") and other materials to solicit potential investors through supporters, paid promoters, and other finders; inviting them to forward the PPMs on to potential investors. (Dkt. 87 at ¶ 16.) In these solicitations and materials, the SEC alleges, the Defendants made false and misleading statements and/or material omissions all

intended to induce unsophisticated investors into purchasing AEHI stock in violation of the antifraud provisions of the federal securities law.

The SEC filed a Motion for Partial Summary Judgement against AEHI and Mr. Gillispie as to the First, Second, and Sixth Claims for relief. (DKt. 166.) The Report granted summary judgment as to the First and Second claims but not the Sixth Claim. (Dkt. 242.) The SEC also filed Motions to Freeze certain assets that Magistrate Judge Bush denied. (Dkt. 241, 264.) The SEC has asked this Court to set aside the Magistrate Judge's orders and issue an order freezing the assets. The Court finds as follows.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo,

findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation). "When no timely objection is filed, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

In this case, the Court has conducted a *de novo* review of those portions of the Report to which the parties have objected. The Court has also reviewed the entire Report as well as the record in this matter for clear error on the face of the record and finds as follows.

## DISCUSSION

### I.   Default as to AEHI

Footnote one of the Report recommends that default be entered against AEHI for failing to appear after its counsel has withdrawn. (Dkt. 242 at 3 n. 1.) AEHI filed an opposition to the Report asking that it be allowed to appear through new counsel and defend itself on the merits. (Dkt. 254, 255.) The SEC has responded

disputing the procedural history as portrayed by AEHI and arguing that, regardless of the ruling on entry of default, summary judgment should be entered against AEHI. (Dkt. 256.) Further, the SEC asserts that AEHI's actions in failing to retain counsel have delayed resolution of this matter and, in particular, its Motions to Freeze.

The record reflects that counsel for AEHI was allowed to withdraw on September 6, 2012. (Dkt. 211.) In the Order granting withdraw the Court gave AEHI twenty-one days in which to file a written notice as to how it would be represented in the matter and advised that failure to appear in the action could result in default. (Dkt. 211.) Unbeknownst to the Court, AEHI's board of directors apparently decided not to hire new counsel to defend the company until trial. (Dkt. 255 at 4.) Since that time, AEHI has retained new counsel and has filed a notice of appearance of its new counsel - albeit untimely. (Dkt. 253) (Dkt. 255 at 6.) AEHI argues because there is no prejudice or culpable conduct resulting from its failure to file a notice of appearance, default should not be entered and it should be allowed to defend itself on the merits of the claims. (Dkt. 255.)

The Court has reviewed the issue and concludes default need not be entered at this time. New counsel for AEHI has now appeared in the case. Although some prejudice may have occurred due to the delay in new counsel appearing, the Court finds it is most appropriate to resolve the case on its merits. Accordingly, the Court will not enter default against AEHI at this time. Failure to comply with the Court's orders in the future, however, may be met with a different result.

## II.   Defendants' Objections to Report

Defendants object to the Report's recommendation that summary judgment be granted on the SEC's First and Second Claims arguing reasonable jurors may differ as to whether: 1) the PPMs, press releases, and letter to shareholders were false and/or misleading in light of the total mix of information available to shareholders at the time and 2) the Defendants acted with the necessary scienter under Section 10b and Rule 10b-5 and/or whether Defendants breached a standard of care under Section 17(a). (Dkt. 244.) In response to these objections, the SEC asserts that Defendants have failed to raise a triable issue of fact on either determination and have not offered any evidence to support their arguments. (Dkt. 249.)

The Court has reviewed the Report, the arguments made on these objections, the parties' initial briefing on the Motion and the entire record herein. Having done so, this Court agrees with the Report's conclusions that summary judgment is appropriate on the First and Second Claims. The Magistrate Judge employed the correct standard of law in analyzing the claims and properly applied the facts of this case to the law in reaching his decision. This Court too has reviewed the record and arrived at the same conclusion as that stated in the Report. The Court adopts the Report's conclusions and analysis on this issue. (Dkt. 242 at 11-17.) The public announcements made by Defendants are, at the very least, misleading and possibly false in regards to material information. Further, the Defendants acted with the requisite level of scienter and/or a reckless disregard for the truth when

issuing the public announcements containing the material misstatements in connection with securities offerings of AEHI. Accordingly, for the reasons stated in the Report, the Court will grant the Motion for Summary Judgment as to the First and Second Claims.

## III. Plaintiff's Objections to Report

### A.    Motion for Summary Judgment on Sixth Claim

The SEC objects to the Report's recommendation that the Motion for Summary Judgment be denied as to the Sixth Claim for Relief - violations of Section 5 of the Securities Act. (Dkt. 243.) On this Claim, the Report concluded it had not been shown that, as a matter of law, AEHI's stock offerings were one integrated offering and that they were public offerings. (Dkt. 242 at 5-11.) The SEC does not challenge the law cited in the Report but, instead, argues the application of the record to the law is erroneous. (Dkt. 243 at 1, 5.) The SEC argues the Defendants failed to raise a genuine issue of material fact establishing their offers and sales of securities were exempt from the applicable registration requirement of the Securities Act. The SEC further objects to the Report asserting it improperly shifted the burden by requiring the SEC to disprove the exemption to the registration requirement. (Dkt. 243.) Defendants respond stating the Report properly analyzed the Claim and denied the Motion as to that Claim because a question of fact exists as to whether the stock offerings were private offerings and/or integrated. (Dkt. 248.)

Section 5 of the Securities Act, 15 U.S.C. § 77e, "make[s] it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010). "To prove a violation of Section 5, the SEC must demonstrate that: (1) there was not a registration statement in effect as to the underlying securities; (2) the defendants directly or indirectly sold or offered to sell the securities; and (3) the sale or offer was made through interstate commerce or the mails." *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007). There is no scienter requirement for Section 5 which imposes strict liability on offerors and sellers of unregistered securities. *SEC v. Alpha Telecom, Inc.*, 187 F.Supp.2d 1250, 1258 (D.Or. 2002).

Here, the parties do not dispute that the SEC has shown its prima facie case for a Section 5 violation. "Once the SEC introduces evidence that a defendant has violated the registration provisions, the defendant then has the burden of proof in showing entitlement to an exemption." *Platforms*, 617 F.3d at 1086 (quoting *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953))).

Section 4(2) of the Securities Act exempts from registration "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). Section 4(2)'s applicability "should turn on whether the particular class of persons affected need the protection of the [Securities] Act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.'"

*Platforms*, 617 F.3d at 1090 (quoting *Ralston Purina*, 346 U.S. at 125). "Stated another way, a limited distribution to highly sophisticated investors, rather than a general distribution to the public, is not a public offering." *Id.* at 1090-91.

To qualify for the Section 4(2) exemption, the parties agree, that courts must consider four factors: 1) the number of offerees; 2) the sophistication of the offerees; 3) the size and manner of the offering; and 4) the relationship of the offerees to the issuer." *Western Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984); *Murphy*, 626 F.2d at 644-45. These factors are to be considered in a flexible manner and Section 4(2) is to be "construed narrowly in order to further the purpose of the Act: 'To provide full and fair disclosure of the character of the securities, and to prevent frauds in the sale thereof.'" *Murphy*, 626 F.2d at 641; *see also Platforms*, 617 F.3d at 1086. Qualification for an exemption under § 4(2) is generally "a question of fact dependent upon the circumstances of each case." *Doran v. Petroleum Management Corp.*, 545 F. 2d 893, 902 (5th Cir. 1977).

The Court finds that the Report may have improperly shifted the burden of proof to the SEC in regards to proving the Section 4(2) exception applies. (Dkt. 242 at 10.) Here, the Defendants do not dispute that they directly or indirectly sold or offered to sell the unregistered securities or that the sales and/or offers were made through interstate commerce. Instead, Defendants counter that the exception found in Section 4(2) applies because the offers were not public. That being the case, the burden is upon Defendants to show entitlement to the exception. *See Platforms*, 617 F.3d at 1086 (Once a prima facie violation has been established, the

defendant then has the burden of proof in showing entitlement to an exemption.);
*Murphy*, 626 F.2d at 641; *Ralston Purina*, 346 U.S. at 126. Accordingly, this Court
has reviewed the record *de novo* and finds as follows on this issue.

### 1.    Integration

Here, when considering the four Section 4(2) factors, the parties dispute
whether the offerings should be considered as distinct and separate offerings or as
one integrated offering. *Murphy*, 626 F.2d at 645. In making the integration
determination, courts look at: 1) whether the offerings are part of a single plan of
financing; 2) whether the offerings involve issuance of the same class of securities;
3) whether the offerings are made at or about the same time; 4) whether the same
kind of consideration is to be received; and 5) whether the offerings are made for
the same general purpose. (Dkt. 242 at 6-7) (citing *Murphy*, 626 F.2d at 645.) The
Report concluded that a question of fact exists as to whether the offerings were
integrated and whether they were public offerings. (Dkt. 242 at 8-10.) Defendants
agree with this conclusion noting each of the particular PPMs identify different
projects they were intended to raise money for and, therefore, they were not an
integrated offering. (Dkt. 190) (Dkt. 239 at 50-52) (Dkt. 248 at 6.)[1]

The SEC disagrees, arguing the PPMs purported to finance AEHI's nuclear
energy pursuits and were one integrated public offering that was required to be

---

[1] At the hearing before the Magistrate Judge, Defendants disputed that all of the PPMs relied upon by the SEC were actually sent out. (Dkt. 239 at 54.) Instead, Defendants submitted the Declaration of Jane E. Nilan which contains the PPMs Defendants agree were sent out. (Dkt. 191, Ex. B-X.)

registered. (Dkt. 167 at 11, n. 2) (Dkt. 200 at 8-9.) The SEC goes on to argue that the § 4(2) exemption factors of size, scope, and methods of distribution, do not support a finding that the offerings were purely private. (Dkt. 243 at 6-13.) Defendants maintain that material questions of fact exist and urge the Court to follow the Report's recommendation. (Dkt. 248 at 7-8.)

This Court has reviewed the record *de novo* in considering whether the offerings in this case were integrated. In their initial briefing on the Motion, the parties raised essentially the same arguments as made in their objections to the Report. Defendants argued that the offerings were distinct and, thus, not integrated; maintaining the PPMs each related to a limited set number of shares to be sold for a certain price and they each related to raising money for distinct business ventures and different stages of such ventures. (Dkt. 189 at 16.)[2] Defendants dispute the SEC's claim that the PPMs were all issued for the same purpose of raising money for any one project but, instead, argue they made twenty-three individual private offerings for varying purposes over the course of four years. (Dkt. 189, 190, 197.)[3]

_____

[2] Defendants Gillispie and Energy Executive Consulting filed a response to the summary judgment Motion that incorporated and relied upon the responsive briefing and documents submitted by AEHI. (Dkt. 197 at 6 n. 1.) In this Order the Court refers to AEHI's briefing collectively as the arguments of all the Defendants.

[3] Defendants go on to argue the SEC makes no claim that any of the separate PPM offerings by themselves violated Section 5 and that determining integration is a disputed factual issue precluding summary judgment. The Defendants do not point to any particular evidence in their initial briefing on this point but rely instead upon AEHI's briefing. (Dkt. 197 at 6 n. 1.) Alternatively, in its objections, although it does not agree with such a conclusion, the SEC addresses the question of whether the stock offerings, when viewed separately, were private offerings. (Dkt. 243 at 8.) In doing so, the SEC offers a chart of the PPMs reflecting the number and proceed amounts of the shares sold
(continued...)

The SEC countered that a conclusion of integration is not necessary for its case because the record shows that the offerings were public. Regardless, the SEC maintains that the offerings were all made for the same purpose of building a new nuclear power plant and the numerous stock offerings were one continuous offering. (Dkt. 200 at 10.)

Defendants have not contested the second or fourth factors of the integration test – that the class of securities and consideration received were the same. (Dkt. 189 at 9-12) (Dkt. 242 at 7.) Thus, the Court will consider the first, third, and fifth factors of the integration test.

### a.        Singular Plan of Financing

Defendants' initial briefing on the Motion for Summary Judgment challenged the SEC's assertion that there was a single plan of financing arguing that the PPMs "respective financing objective varied widely" and that "[e]ach offering related to a limited set number of shares to be sold for a certain price, and the PPMs' terms disclose that each was intended to raise money for differing groupings of individual and distinct business ventures and different stages of such ventures." (Dkt. 189 at 16.) In their response, Defendants offered an exhibit which, they

---

[3](...continued)
during each of the PPMs effective dates. The SEC argues the chart reveals that 1) even considering each PPM as a singular offering, several were so large that they could not have been considered private for purposes of Section 4(2); 2) the PPMs overlapped such that effectively there was no time between the offers; and 3) hundreds of thousands of shares were sold during each PPM. Defendants oppose this argument noting it was not raised before the Magistrate Judge and the question of whether the securities were exempt is a question of fact for the jury. (Dkt. 248 at 8-9.) In light of the Court's ruling in this Order, the Court need not reach this question as to whether separately the offerings qualify for the registration exemption.

argue, shows the many different projects for which the numerous offers were made. (Dkt. 191-1, Ex. A.) This chart shows fifteen different projects which were listed on the various PPMs. The SEC counters that the chart is misleading and maintain that the PPMs all seek capital for AEHI's purported nuclear project with the twenty most recent PPMs referring to "Idaho Energy Complex." (Dkt. 200 at 12.) Further, the SEC points out that the PPMs describe all of the projects under the same general heading of "Business of the Company" and refer specifically to profitability of a nuclear plant. (Dkt. 200 at 12 n. 6.)

The Court concludes that Defendants have failed to show a genuine issue of material fact exists as to whether or not the offerings were for a single plan of financing. The language of the PPMs themselves make clear that the offerings were for the purpose of raising money for AEHI to finance nuclear power projects. While the PPMs have variations in the names of the projects listed under the "Business of the Company" heading, the description of the business contained in that heading is telling. The "Business of the Company" section of the PPMs consistently states AEHI's purpose or "primary initiative" is purchasing or building nuclear power facilities. *See e.g.* (Dkt. 191, Ex. D.) For example, one PPM's Business of the Company section states: "AEHI is seeking to build nuclear plants in the US and developing companies. AEHI is the only publically traded company west of the Rockies proposing a large advanced nuclear plant." (Dkt. 191, Ex. L.) The section goes on to state AEHI "will continue to look for opportunities for expansion" suggesting that aside from its main purpose in nuclear

energy it may "expand" into other eco-efficient power and energy sources. (Dkt. 191, Ex. L.) That AEHI may have projects with different names does not change the fact that AEHI, as a company, was pursuing nuclear energy power sources as reflected in its Business of the Company section of the PPMs. The Defendants have failed to point to any evidence, aside from the fact that different projects were listed on the various PPMs, that its offerings were for anything other than the plan of financing stated in the Business of the Company section of the PPMs. It is for that purpose that investors purchased the shares.

<strong>b.       Timing of the Offers</strong>

Defendants assert that the PPMs made offerings for different projects over more than four years such that it cannot be said that the offerings were made "at or about the same time." (Dkt. 189 at 17) (Dkt. 197 at 5.) The "separation in time from one system offering to the next" is the relevant period for determining integration, not the total duration of the offerings. *Murphy*, 626 F.2d at 646. Although the offerings here occurred over a period of four years, the offerings themselves were issued approximately every two to three months with there being some shorter and some longer intervals along the way. (Dkt. 191-1, Ex. A.) Moreover, the offerings had overlapping periods between their issue dates, expiration dates, and the issuance of new offerings. (Dkt. 191, Ex. B-X.) Based on the PPMs themselves, there was no separation between the offers and Defendants have not shown a genuine issue of material fact exists to the contrary. This factor weighs in favor of integration.

### c.       General Purpose

Similar to the first factor, the parties dispute whether or not there was one general purpose for the offerings. Defendants argued in their initial briefing that the PPMs make clear that they were not made for the same general purpose but, instead, were raising money for various projects by the same company. (Dkt. 189 at 18.) The Defendants argue that raising money for various projects of the same company does not equate to making offerings for the same general purpose. (Dkt. 189 at 18.) Defendants maintain that the offerings listed differing projects in each of the PPMs that concerned different businesses in different markets including producing energy-efficient homes, lightening harvesting, ventures in China, and an energy park in Colorado. (Dkt. 189 at 18 n. 8.) The SEC counters that the Defendants have failed to show this element. (Dkt. 200.)

Again, the language of the PPMs themselves rebut the Defendants' argument that the offerings were not for the same general purpose. Although the PPMs vary in some respects as to the projects listed on each, the purpose of the PPMs was not limited to those particular listed projects. Instead, the listed projects were examples of the projects AEHI was pursing in furtherance of its general business purpose as stated in its "Business of the Company" section of the PPMs. For instance, the April 1, 2007 PPM states that AEHI is "actively pursing patents and outside contracts – as applicable – on several current projects, detailed below." (Dkt. 191, Ex. D.) It then lists five different projects. The PPM does not, however, state that the securities offering is to fund only those five projects. Instead, the projects

appear to be examples of the ongoing activities AEHI is pursuing. In fact as to one of the projects on the April 1, 2007 PPM, the Advanced nuclear plant project, the PPM states: "These funds will be in a separate offering plus construction financing." (Dkt. 191, Ex. D at 3.) Indicating that the April 1, 2007 PPM was not for purposes of funding at least that particularly listed project. Instead, the projects listed were examples of the kinds of projects AEHI was pursuing as a company. Thus, the fact that the PPMs listed different projects pursued by AEHI does not make the offerings distinct. The Court finds the Defendants have not pointed to evidence showing the existence of a genuine issue of material fact on this question.

### d.    Conclusion

In this case, the Report concluded that question of fact existed as to whether the offerings were integrated. (Dkt. 242 at 10.) This Court disagrees. After conducting a *de novo* review of the record, this Court finds that the Defendants have not shown a genuine issue of material fact exists as to the integration question. Even if a genuine issue of material fact were to exist on the integration question, this Court concludes that the Defendants have failed to satisfy their burden of showing a question of fact exists on the issue of whether its offerings were exempt from the registration requirement because they were private offerings.

### 2.    Section 4(2) Registration Exemption

Again, to qualify for the Section 4(2) exemption, Defendants must come forward with specific facts showing the existence of a genuine issue of material

fact as to four factors: 1) the number of offerees; 2) the sophistication of the offerees; 3) the size and manner of the offering; and 4) the relationship of the offerees to the issuer." *Western Fed. Corp.*, 739 F.2d at 1442. In doing so, the opponent to the motion "may not rest on his pleadings; instead, he must offer 'significantly probative' evidence as to any fact claimed to be disputed." *Id.* (citing *Murphy*, 626 F.2d at 640).

In response to the Motion for Summary Judgment, Defendants argued that the offerings were private offerings and, therefore, exempt from Section 5's registration requirements. (Dkt. 189, 197.) The SEC's reply briefing on the initial Motion countered that the Defendants had failed to raise a factual question as to the Section 5 violation because they did not dispute that the *prima facie* case has been shown and failed to come forward with evidence of the Section 4(2) registration exemption. (Dkt. 200 at 6-13.)

The SEC has come forward with evidence that the number of offerees, whether viewed in the aggregate or by individual offerings, was in the hundreds in terms of investors, and thousands to millions in terms of the numbers of stocks sold and dollars received from the sales. Additionally, the SEC notes that the offerings were heavily promoted in general solicitations without limitations. Having come forward with such evidence, it is incumbent upon Defendants, in opposing the summary judgment motion, to rebut that evidence. *Murphy*, 626 F.2d at 645. The Defendants have failed to do so here.

### a.      Number of Offerees

In addressing the first factor, it is the "number of offerees, not the number of purchasers, [that] is the relevant figure in considering the number of persons involved in an offering." *Doran*, 545 F.2d at 900. "The number of offerees is not itself a decisive factor in determining the availability of the private offering exemption. Just as an offering to few may be public, so an offering to many may be private." *Id.* (citing *Ralston Purina*, 346 U.S. at 125.

Here, the SEC has pointed out that the PPMs made offers to over 850 investors. (Dkt. 200 at 7-10) (Dkt. 243 at 9.) The SEC further notes there was no limit to the number of offers made as the Defendants used general solicitation methods and encouraged others to forward the offerings on to others. (Dkt. 200 at 9.) While disputing the number of investors (850) that the SEC claims have purchased stocks, Defendants failed to present any evidence of the number of offerees. Instead, Defendants rely on there being a factual dispute over integration and argue the SEC has not shown integration to support its figure. (Dkt. 189 at 19.) Regardless of the number, Defendants maintain the 850 purchasers over four years does not establish a public offering.

Even if Defendants are correct that the offerings should not be integrated, they have failed to satisfy their burden at this stage to come forward with evidence that the offerings were exempt from the registration requirements. "A private placement claimant's failure to adduce any evidence regarding the number of offerees will be fatal to the claim." *Doran*, 545 F.2d at 900-01 (citations omitted);

*Murphy*, 626 F.2d at 645. While there is no fixed limit on the number of offerees
to whom an issuer can make a private offering, generally "the more offerees, the
more likelihood that the offering is public." *Murphy*, 626 F.2d at 645-46 (In
*Murphy*, the court considered the offers to be integrated and concluded that the 400
offers "clearly suggests a public offering rather than private placement.") (citations
omitted).

Here, Defendants offer no evidence as to the number of offerees, that the
number was small such that it is indicative of a private offering, or that the number
of offerees was monitored or limited in any way. Regardless of whether the
offerings are considered integrated or separately, the Court finds the Defendants
failed to show a genuine issue of material fact exists as to the number of offerees
factor and have failed to satisfy their burden on summary judgment to come
forward with specific facts showing there remains a genuine issue for trial –
particularly since the Defendants offered no evidence to show that the offerings
were limited in anyway. *See* Fed. R. Civ. P. 56(e). If the securities offerings were
integrated, the numbers suggest that they were clearly public offerings. If, on the
other hand, the offerings were not integrated, Defendants have not pointed to
evidence giving rise to a genuine issue of material fact that the number of offerees
were such that the offerings should be considered non-public. Accordingly, the
Court finds this factor weighs in favor of finding the stock offerings to have been
public.

### b.      Sophistication of the Offerees

As to the sophistication of the offerees, the SEC has come forward with evidence that the investors were of the kind for whom the protections of the Securities Act were intended. Defendants claim the exhibits offered by the SEC demonstrate the sales were made to persons who can fend for themselves and who fall under the safe-harbor provision. (Dkt. 189 at 20.) Defendants further maintain the purchase documentation for the shares had an affirmation of an accredited investor and each PPM includes a Regulation D certificate clearly stating the high risks involved in the investment. (Dkt. 189 at 21.)[4] Based on these affirmative representations, Defendants argue, it was reasonable for them to believe the investors were sophisticated. The SEC counters that the safe-harbor provision was not available to Defendants because AEHI's own records indicate that it offered and sold stock to unaccredited and unsophisticated investors. (Dkt. 167 at 12.)

"In *Ralston Purina*, the Supreme Court held: [T]he applicability of Section 4(2) should turn on whether the particular class of persons affected needs the protection of the Act. An offering to those who are shown to be able to fend for

---

[4] If the offerings are determined to not be integrated, the Defendants argue the separate offerings qualify for the Regulation D safe-harbor permitting sales to 35 non-accredited investors per offering. (Dkt. 189 at 20.) "Regulation D creates a safe harbor within this exemption by defining certain transactions as non-public offerings." *Platforms*, 617 F.3d at 1091 (citations omitted). "To qualify for Regulation D safe harbors, the issuer must comply with Rule 502(d) and 'exercise reasonable care to assure that the purchasers of the securities are not underwriters within the meaning of section 2(11) of the Act.'" *Id.* (citing 17 C.F.R. § 230.502(d)). While taking these actions will establish the requisite reasonable care, it is not the exclusive method to demonstrate such care. *Id.* Because the Regulation D safe-harbor does not apply to general solicitations, which these offerings were, the Court finds the accreditations relied upon by Defendants do not place the offerings within the registration exception. *See* 17 C.F.R. § 230.502(c).

themselves is a transaction 'not involving any public offering.'" *Murphy*, 626 F.2d at 644 (quoting *Ralston Purina*, 346 U.S. at 125). The Court finds that Defendants may have shown a question of fact exists on this question by pointing to the affirmations contained on the PPMs. As discussed below, however, because the Defendants have not shown that all of the offerees also had access to the type of information that registration would disclose and/or that a sufficient relationship existed such that the offer is not considered a general solicitation, the Defendants have failed to show that the offerings qualify for the registration exemption. *See e.g. SEC v. Kenton Capital, Ltd.*, 69 F.Supp.2d 1, 11 (D.D.C. 1998) ("Even if the Court were to find that Defendants had created an issue of material fact with respect to investor sophistication, 'sophistication is not a substitute for access to the information that registration would disclose.'") (quoting *Doran*, 545 F.2d at 902-03).

### c.    Size and Manner of the Offering(s)

As to the size and manner of the offering, "[i]f an offering is small and is made directly to the offerees rather than through the facilities of public distribution such as investment bankers or the securities exchanges, a court is more likely to find that it is private." *Murphy*, 626 F.2d at 646 (citations and quotations omitted). The purchase price on the offerings in this case appear to have been penny stocks but the size of the offerings were quite large, whether viewed individually or collectively. The SEC argues the offerings were in the manner of a general solicitation using general advertising over television, radio, and in person. (Dkt.

167 at 19.) In addition, the SEC contends that the Defendants hired helpers and promoters to solicit additional investors, held investment seminars, and paid commissions to promoters. Defendants have not disputed the volume of sales or dollars raised as asserted by the SEC. The Defendants do deny that the offerings were made through advertising, outside help, or investment bankers or securities exchange points. (Dkt. 189 at 22.) Defendants maintain they distinguished between individuals who were qualified investors and those who were not.

Having reviewed the record, this Court finds that Defendants have failed to point to evidence giving rise to a genuine issue of material fact showing the size and manner of the offerings were private. Although Defendants argue the offerings were not made through investment bankers or securities exchanges, they admit that they used helpers and promoters at least as to one offering but deny any other use of outside help. The Defendants do not, however, point to any evidence to rebut the contention that they encouraged others to forward the offerings on to other potential investors or that they paid commissions or finder's fees for doing so. Whether viewed collectively or individually, the evidence in the record indicates the offerings were large such that the size and manner supports a finding that the offers were public and the Defendants have not otherwise shown a genuine issue of material fact exists.

### d.        Relationship of the Offerees to the Issuer

The ultimate question in determining whether an offer of securities is a private offering exempt from registration under Section 4(2) of the Securities Act

is whether the offerees are able to fend for themselves or, conversely, whether they need the protections afforded by the registration requirement. In order to be exempt from the registration provisions under Section 4(2), a private offering must be one where investors do not need the protections of the Securities Act because they already have access to the kind of information that would be contained in the registration statement – investor sophistication alone is insufficient. *See Parvin v. Davis Oil Co.*, 524 F.2d 112, 118 (9th Cir. 1975) "A court may only conclude that the investors do not need the protection of the Act if all the offerees have relationships with the issuer affording them access to or disclosure of the sort of information about the issuer that registration reveals." *Murphy*, 626 F.2d at 647 (citations omitted). The nature, extent, and timing of the information available to an offeree is the "touchstone of the inquiry into the private offering exemption." *Doran*, 545 F. 2d at 900 (citation omitted). To qualify for the Section 4(2) exemption, the issuer must make available to the offerees "the same kind of information that the Act would make available in the form of a registration statement." *Ralston Purina*, 346 U. S. at 126-126. Although the issuer need not provide information on all 32 categories of Schedule A, 15 U. S. C. § 77aa, the offeree must have available "the sort of information about the issuer that registration reveals." *Murphy*, 626 F. 2d at 647. The information required to be disclosed under the Securities Act is "quite extensive" so as to satisfy the Act's purpose of providing potential investors with detailed knowledge of the company and its affairs so that they can make an informed investment decision. *Id.* Where

potential investors receive or have access to the kind of information about the company they would be entitled to under the Act, such a circumstance would weigh in favor of finding the offering is a private one.

In this case, the SEC maintains the Defendants had no preexisting relationship with many of its offerees because it engaged in general solicitation fo the public and used promoters to solicit persons unknown to them. (Dkt. 167 at 19.) Essentially the SEC contends the Defendants did not limit the offerings in any way such that it knew or had any relationship with the offerees. Additionally, the SEC argues the offerees did not have access to the requisite information found in a registration statement that would provide the kind of information sufficient for the offeree to make an informed investment decision; particularly in light of the fact that the information that did exist was false, misleading, and inaccurate. (Dkt. 167 at 19-20.) The SEC points out that there is no evidence the solicited investors had a relationship with the companies or its members such that they did not need the protections afforded by the Securities Act. The SEC has come forward with evidence that the requisite relationship did not exist making it necessary for Defendants to, in defending against summary judgment, show a genuine issue of material fact exists that the offerees had available the necessary information. Defendants have failed to do so here.

The Court finds the offerees were the kind of people for whom the federal securities laws were designed to protect. The Defendants have not rebutted the evidence provided by the SEC that the prospective investors had no relationship or

otherwise had access to the necessary information about the company to make an informed investment decision. The SEC has pointed out that Defendants knew little to nothing about the offerees and, at best, relied upon affirmations. (Dkt. 200 at 10.) As noted above, the Defendants have not pointed to any evidence that their offerings were limited in any way such that even the Defendants themselves know who all the securities offerings were made to.

Defendants argue the offerees had access to information about the company that was equivalent to what would be found in a registration statement and that would be materially relevant to their investment decision through the PPMs, the company website, and other publicly available information. (Dkt. 189 at 23.) Defendants point to Exhibits 1-4 attached to the Declaration of Robert Tashjian which contain this Court's Order to Show Cause, AEHI's 2010 and 2011 annual reports, and AEHI's quarterly report for the period ending June 30, 2012.  (Dkt. 218.) The Court disagrees. The materials identified by the Defendants do not supply the kinds of information required by a registration statement. General company information contained in an annual report is not the same kind of information found in a registration statement.

The statements contained in the PPMs and/or AEHI's annual report do not satisfy the requirement that offerees have the necessary information available to them that they would find in a registration statement. *See Lasker v. New York State Electric & Gas Corp.*, N. 94-CV-3781 (ARR), 1995 WL 867881, at *6 (E.D.N.Y. Aug. 22, 1995) (discussing statements in an annual report in the context of a §

12(2) claim). An annual report "is a document that is not required to contain the information in the registration statement. While some of the information required in an annual report is also required in a registration statement..., an annual report is subject to different requirements and may include less information than the registration." *Id*. (citing 17 C.F.R. § 240.14a–3; cf. Sec.Act Release No. 6223 (Sept. 2, 1980)).

While an annual report offers investors an insight into the company's activities for a given year it is different from an registration statement. The contents of a registration statement are regulated to include a comprehensive financial profile of the company based on regulated criteria. The registration statement demands detailed disclosures about the company's business and financial condition, operating results, management compensation, and other matters. As such, the Court concludes the information available to the potential investors in this case was insufficient to provide them with the kind of information they would have under the Securities Act.

### e.    Conclusion

Because the SEC met its burden to show the existence of the prima facie case for its claim of a violation of Section 5 of the Securities Act, the burden here is upon the Defendants to shown that genuine issues of material fact exist as to whether the securities offered fall within the Section 4(2) exemption. The Court finds Defendants have not met their burden here. Having considered the record *de novo*, on this question, this Court concludes that Defendants have failed to point to

evidence showing a genuine issue of material fact exists that the offerings in this case were public and, therefore, not exempt from the registration requirements of the Securities Act. Accordingly, the Court will grant the Motion for Summary Judgment as to the Sixth Claim of the Complaint.

### B.    Order Freezing Assets

The Report also contained an Order by Magistrate Judge Bush which granted in part and denied in part the SEC's Motion for Order to Show Cause and Order Freezing. (Dkt. 241 and 242 at 18.) Thereafter the SEC filed a renewed Motion to Freeze, and related materials, to which responsive briefing was filed. (Dkt. 258-263.) Magistrate Judge Bush issued an Order denying the renewed Motion to Freeze. (Dkt. 264.) The SEC has filed a Motion and Objections to both of the Magistrate Judge's Orders asking this Court to set aside the same and issue an order freezing assets. (Dkt. 243, 265.) The Court finds as follows.

Federal Rule of Civil Procedure 72(a) provides that a party may object to an order issued by a magistrate judge on a nondispositive matter and the district judge may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). If a ruling on a motion is not determinative of "a party's claim or defense," it is not dispositive and, therefore, is not subject to *de novo* review as are proposed findings and recommendations for dispositive motions under Title 28 U.S.C. § 636(b)(1)(B).

Generally, in reviewing the Magistrate Judge's Order this Court will not consider materials not presented to the Magistrate Judge for his consideration. *See*

*e.g. Estate of Gonzales ex rel. Gonzales v. Hickman*, No. ED CV 05-660 MMM, 2007 WL 3231956, at *3 (C.D. Cal. April 18, 2007). The Court may, in its discretion, receive and "consider evidence presented for the first time on a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (discussing the Circuit split on whether a district court must or may consider new evidence when reviewing de novo a magistrate judge's findings and recommendation, and concluding that a district "has discretion, but is not required" to consider new evidence); 28 U.S.C. § 636(b)(1). "[I]n making a decision on whether to consider newly offered evidence, the district court must actually exercise its discretion, rather than summarily accepting or denying the motion." *Id.* at 622.

"Under Rule 72(a), a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Schiro v. Clark*, No. 3:10-cv-00203-RCJ-VPC, 2013 WL 4714403, at *1 (D. Nev. Aug. 30, 2013) (citations and marks omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* "This standard of review reflects the broad discretion accorded to magistrate judges on pretrial matters." *Gessele v. Jack in the Box Inc.*, No. 3:10-CV-00960-BR, 2013 WL 4542033, at *4 (D.Or. Aug. 27, 2013) (citing *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002)).

The assets sought to be frozen in this case are funds totaling approximately $2 million deposited by AEHI into an escrow account controlled by Black & LoBello, LLC. The funds were deposited pursuant to a Financial Service Agreement entered into between AEHI and Hamilton Guaranty Capital, LLC ("Hamilton"). There is now a dispute between AEHI and Hamilton over which party is entitled to receive the funds. Both parties sent demands for payment to Black & LoBello who then filed a Complaint for Interpleader against AEHI and Hamilton in Nevada state court. That court has entered an order requiring that 1) the funds be blocked and inaccessible to either party without a further order of the court and 2) the parties resolve the dispute by way of mandatory binding arbitration under the terms of the Financial Services Agreement.

The SEC requests an order from this Court freezing the $2 million held by Black & LoBello arguing the transfer of those funds to the escrow account was done in contravention of this Court's February 14, 2011 Order and is a part of a scam. (Dkt. 219, 243.) The SEC argues the Magistrate Judge erroneously concluded that it lacked authority to freeze the assets. The SEC also points to recent events which, it argues, further necessitate freezing the assets including that AEHI concealed the transfer by failing to disclose it in its accountings, new additional information that the promises by Hamilton to AEHI were a fraud, verification that Hamilton has not made a deposit as it had promised/represented, and AEHI has admitted in the Nevada state court action that the Hamilton transaction was a scam. (Dkt. 248 at 19-20.) Defendants argued to the Magistrate

Judge that they had not violated the Court's Order because the transfer of funds was not an expenditure required to be disclosed and, regardless, the transfer was eventually disclosed. Further, Defendants argued that the freeze is unnecessary in light of the existing order from the Nevada state court and that the SEC has not shown the freeze is warranted here as the additional freeze would effectively shut down the company. (Dkt. 228-30, 239, 260-62.)

### 1.      Equitable Authority of the Court

In both of his Orders on the Motions to Freeze, the Magistrate Judge questioned his inherent jurisdiction to grant the relief the SEC seeks given the matter is the subject of an interpleader action in another court. (Dkt. 241 and 242 at 19) (Dkt. 264 at 4.) The SEC maintains that this Court has the inherent equitable authority to freeze accounts and assets if it shows 1) a likelihood of success on the merits of its claim and 2) a likelihood of dissipation of the claimed assets or other inability to recover monetary damages if relief is not granted. (Dkt. 243 at 22.) Here, the SEC seeks an order that would require Black & LoBello to maintain the funds in their current location pending the outcome of this litigation in order to preserve the status quo. The SEC contends such an order would complement the Nevada state court order which, the SEC argues, is not adequate to secure the funds until resolution of this case. The Magistrate Judge remained unconvinced by the SEC's second Motion to Freeze as to his underlying jurisdiction to issue the requested relief even in light of then recent events. (Dkt. 264 at 4.) The SEC

maintains this ruling is contrary to law and asks this Court to set aside the Magistrate Judge's ruling. (Dkt. 265.) The Court finds as follows.

In its initial briefing on the Motion to Show Cause and Freeze, the SEC argued the Defendants had violated this Court's February 14, 2011 Order requiring an accounting of the transferred funds and violated the Exchange Act, (Dkt. 220.) The SEC asserted that the Court has the inherent equitable authority to freeze accounts and assets in order to ensure that assets which are the subject of the enforcement action are not dissipated or secreted pending final judgment and to ensure that victims are compensated. (Dkt. 220 at 17) (Dkt. 243 at 22.) This Court agrees.

District courts have broad equitable power to order appropriate relief in civil contempt proceedings. *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949)). In *Hickey*, the Ninth Circuit stated: "We conclude that the district court's broad equitable powers, drawn from a tradition of allowing courts to reach third parties in order to effect orders in securities fraud enforcement actions, authorized the asset freeze." 322 F.3d at 1131. "[F]ederal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Id.* (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). The Ninth Circuit recognized that district courts may shape equitable remedies to the necessities of particular cases and may restrain a nonparty in doing so. *Id.* Such relief, however, is to be exercised "only where necessary." *Id.*

(freezing the assets of a nonparty was appropriate where the nonparty is dominated and controlled by a defendant against whom relief has been obtained through a securities enforcement action).

Here, there is no evidence that the Defendants are dominated or controlled by Hamilton or Black & LoBello as was found in *Hickey*. There is, however, evidence that AEHI has transferred funds, which are the subject of this enforcement action, possibly fraudulently or in contravention of this Court's February 14, 2011 Order. Because the funds are the subject of this securities enforcement action, the Court agrees with the SEC that it does have the authority to fashion an appropriate equitable remedy, as necessary, to ensure the enforcement of federal securities laws and this Court's orders.

## 2.      Equitable Relief

In addition to the arguments made to the Magistrate Judge noted above, the SEC has alleged new facts further support the issuance of an order freezing the assets. The new facts involve more recent events that the SEC argues confirms that the financing transaction and Nevada state court litigation among AEHI, Hamilton, and Black & LoBello are a scam. (Dkt. 243 at 19)[5] In particular, information going to show Hamilton's promise to supply an offshore account valued at $200 million was not fulfilled based on information from banking regulators in New Zealand

---

[5] The SEC has maintained its request for an order freezing the funds in its responsive briefing to AEHI's Motion to Approve Settlement. (Dkt. 274.) This Court has reviewed the materials supplied by the parties to date on that Motion. Because the arguments raised in the newly filed materials are essentially the same as those raised in their briefing on the Motions that are the subject of this Order, the Court has considered the same to the extent they are relevant to the ruling in this Order. The Motion to Approve Settlement, however, remains pending before Magistrate Judge Bush.

where the offshore financial institution, General Equity Building Society, is headquartered. (Dkt. 245.) Additionally, the SEC notes that AEHI has now admitted in the Nevada state court case that it believes the transaction was a scam in relation to AEHI's filing requesting a more cost-effective arbitration forum. At risk, SEC asserts, is the loss of the $2 million AEHI put into the escrow and which is all that remains of the funds raised by way of the securities offerings at issue in this case.

The Court has reviewed the new materials and finds it appropriate to exercise its discretion and consider the same in ruling on the question of freezing assets. *Howell*, 231 F.3d at 621. These materials are relevant to this Court's determination on the question of whether to order that the funds be frozen. Further, the new materials were not obtained by the SEC until after the hearing before Magistrate Judge Bush was held and/or obtained by the SEC only shortly before the Report was issued. (Dkt. 245 at ¶ 5.) Some of these materials did not exist at the time of the hearing. (Dkt. 245, Exs. 3, 4.) The Court has also considered the materials submitted by the parties that were before the Magistrate Judge. (Dkt. 218-30, 232, 234, 239, 258-263.)

Having reviewed the record in this case, the Court finds that the Motion to Freeze is well taken. The funds appear to be the subject of the dispute between the parties in this case. It also appears AEHI may have transferred the funds in

violation of this Court's Order.[6] Furthermore, the new materials provided by the SEC regarding the transfer of funds appears to place those funds in jeopardy of being available for recovery in this action.[7] In order to ensure those funds are not further transferred and possibly lost entirely in the event recovery is found to be appropriate in this securities enforcement action, the Court finds it necessary to order that the funds remain in their current account unless otherwise ordered by this Court. The Nevada state court's order does not adequately protect the funds for this purpose.

Without such relief the Court finds it highly likely that the funds may be lost and, thus, become unavailable if relief is awarded to the SEC in this case. Further, the Court find the SEC has shown a likelihood of success on the merits of the claim as well as a likelihood that the claimed assets will be dissipated or that relief may otherwise be unavailable without this equitable relief. *See e.g., Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."); *SEC v. Cavanagh*, 155 F.3d 129, 132 (2nd Cir. 1998) (An asset freeze requires a lesser showing than a preliminary injunction in that the SEC must establish only that it is likely to

---

[6] In so stating, the Court does not reach a finding that the Defendants are in violation of the Court's prior Order. Instead, this Court rules that the SEC has made a proper showing that an asset freeze is necessary in this case.

[7] AEHI has acknowledged that, in the Nevada state court action, Hamilton has engaged in a "strategy to avoid having its fraudulent scheme come to light." (Dkt. 270 at 6.)

succeed on the merits. The SEC need not show risk of irreparable injury.) Accordingly, the Court will grant the SEC's Motions to Freeze and order that the $2 million held in escrow by Black & LoBello remain in that same account unless and until otherwise ordered by this Court.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that the Report and Recommendation entered on March 13, 2013 (Dkt. 242) is **ADOPTED IN PART AND REJECTED IN PART** as stated herein and the Court HEREBY ORDERS as follows:

1) Plaintiff's Motion for Partial Summary Judgment (Dkt. 166) is **GRANTED**. Plaintiffs are granted summary judgment as to the First, Second, and Sixth causes of action.

2) Plaintiff's Motions for Order Freezing (Dkt. 219, 258) and Motion and Objection RE: Order Freezing (Dkt. 265) are **GRANTED**. The funds currently held in escrow by Black & LoBello are HEREBY ORDERED to **REMAIN** in that escrow account pending further order from this Court.

**DATED:  May 13, 2014**

**Honorable Edward J. Lodge**
**U. S. District Judge**

MEMORANDUM DECISION AND ORDER - 36